[Cite as *Angelo v. Angelo*, 2013-Ohio-5265.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| KAREN M. ANGELO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO.  2012-T-0094 |
| ANTHONY L. ANGELO, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 586.

Judgment: Affirmed.

*James R. Wise,* 6630 Seville Drive, Canfield, OH 44406 (For Plaintiff-Appellant).

*Anthony G. Rossi,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482, and *Deborah L. Smith,* Smith Law Firm, 109 North Diamond Street, Mercer, PA 16137 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}    Plaintiff-appellant, Karen M. Angelo, appeals the Judgment Order of the Trumbull County Court of Common Pleas, Division of Domestic Relations, adopting the Magistrate's Decision of September 20, 2012, and overruling objections thereto.  The issue raised in this appeal is whether, pursuant to Civil Rule 60(A), a trial court may modify a qualified domestic relations order (QDRO) to accurately reflect the division of a pension asset as set forth in the decree of divorce.  For the following reasons, we affirm the decision of the court below.

{¶2} On December 2, 2004, the Trumbull County Court of Common Pleas, Division of Domestic Relations, issued a Judgment Entry (Decree of Divorce), terminating the marriage between Karen M. Angelo and defendant-appellee, Anthony L. Angelo. In the division of property, which was based on stipulations entered into by the parties, the court ordered that "one-half (1/2) of [Anthony's] vested interest" in his J.C. Penney Corporation, Inc., Savings, Profit-Sharing and Stock Ownership Plan account, which "accrued from May 21, 1988 to November 9, 2002," would be "transfer[red] and assign[ed] to [Karen] by a Qualified Domestic Relations Order."

{¶3} On January 14, 2005, the domestic relations court issued a QDRO with respect to the J.C. Penney Savings Plan, containing the following provision:

{¶4} SECTION 4. From the benefits which would otherwise be payable to the Participant [Anthony] under the Plan, the Participant assigns to Alternate Payee [Karen] and the Alternate Payee shall receive directly from the Plan, an amount equal to fifty percent (50%) of Participant's vested account balance accrued from May 21, 1988, to November 9, 2002.

{¶5} On March 2, 2006, an amended QDRO was issued with respect to the J.C. Penney Savings Plan. The amended QDRO added a section addressing the payment of benefits in the event of the death of the Participant and/or Alternate Payee. Section 4 of the amended QDRO remained unchanged, except that the words "accrued from May 21, 1988" were omitted. In the amended QDRO, Karen was to receive from the Plan "an amount equal to fifty percent (50%) of Participant's vested account balance as of November 9, 2002."

{¶6}    On April 19, 2012, Anthony filed a Motion, asking the domestic relations court to issue another amended QDRO with respect to the J.C. Penney Savings Plan. Anthony asserted that the March 2, 2006 QDRO was inconsistent with the parties' stipulation that Karen "was to receive fifty percent (50%) of said account balance accrued from May 21, 1988 (the date of marriage) to November 9, 2002."

{¶7}    On May 16, 2012, Anthony filed an Amended Motion for Relief from Judgment, asking the domestic relations court to amend the March 2, 2006 QDRO "pursuant to Civ.R. 60(A) due to a clerical mistake in said Order arising from omission."

{¶8}    On September 27, 2012, a Magistrate's Decision was issued, granting Anthony's Motion for Relief from Judgment.  The parties submitted the matter on the briefs and presented no testimony or other evidence.

{¶9}    On the same date, the domestic relations court issued a Judgment Order, adopting the Magistrate's Decision.  The court held that the "mistake alleged is clearly found to be clerical in nature which occurred when drafting the Amended QDRO which, by oversight was not found and corrected."  The court vacated the March 2, 2006 QDRO and ordered Anthony to present "a new Amended QDRO awarding Plaintiff/Wife * * * her one-half share to be determined as stipulated to and set forth in the parties['] divorce decree."  The court further ordered Karen to "transfer back to Defendant any funds she is not entitled to per the revised Amended QDRO which consist of the non-marital portion not acquired between 5/21/88 (date of marriage) through 11/9/2002."

{¶10}   On October 10, 2012, Karen filed Objections to Magistrate's Decision.

{¶11}   On October 31, 2012, the domestic relations court issued a Judgment Order, overruling Karen's Objections.

3

**{¶12}** On November 29, 2012, Karen filed a Notice of Appeal. On appeal, Karen raises the following assignment of error:

**{¶13}** "[1.] Did the trial court err in granting relief from judgment."

**{¶14}** "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." Civ.R. 60(A). As construed by the Ohio Supreme Court, "Civ.R. 60(A) permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments." *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996), citing *Londrico v. Delores C. Knowlton, Inc.*, 88 Ohio App.3d 282, 285, 623 N.E.2d 723 (9th Dist.1993). "The term 'clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." *Id.*

**{¶15}** On appeal, Karen argues that, although it may have been a "blunder in execution" to omit the language limiting her interest in the Savings Plan to the amounts accrued during the course of the marriage, "it should be remembered that the Defendant drafted the document."

**{¶16}** The omission of the words "accrued from May 21, 1988" from the March 2, 2006 QDRO is precisely the sort of omission, "mechanical in nature and apparent on the record which does not involve a legal decision or judgment," that Civil Rule 60(A) authorizes a court to correct. That fact that Anthony's counsel committed the blunder does not change the character of the omission or render Civil Rule 60(A) inapplicable.

4

{¶17} Karen further argues that "the Qualified Domestic Relations Order has already been accepted by the Company and the funds have been divided," i.e., Civil Rule 60(A) does not authorize a court to order her to "accomplish an equalization" of marital assets after their actual division.

{¶18} In the present situation, a domestic relations court does not need to rely on Civil Rule 60(A), or any other Rule, for authority to order Karen to return the funds she received pursuant to the March 2, 2006 QDRO and in contravention of the divorce decree.

{¶19} "A division or disbursement of property * * * is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I). Properly speaking, however, a QDRO is distinct from the decree dividing or disbursing marital property. "[A] QDRO is merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it." (Emphasis sic.) *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 19, citing *Bagley v. Bagley*, 181 Ohio App.3d 141, 2009-Ohio-688, 908 N.E.2d 469, ¶ 26 (2nd Dist.). Since the sole purpose of a QDRO is to implement the terms of a divorce decree, it "may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 18, citing *Lamb v. Lamb*, 3rd Dist. Paulding No. 11-98-09, 1998 Ohio App. LEXIS 6007, 5 (Dec. 4, 1998). Where the terms of a QDRO conflict with the property division set forth in the divorce decree, many courts have held that the QDRO is void or a legal nullity. *Pawlak v.*

5

*Pawlak*, 8th Dist. Cuyahoga No. 95734, 2011-Ohio-5652, ¶ 10 (cases cited); *Patten v. Patten*, 4th Dist. Highland No. 10CA15, 2011-Ohio-4254, ¶ 17 (cases cited); *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 08 MA 90, 2010-Ohio-1311, ¶ 50; *but see Pearl v. Pearl*, 2nd Dist. Champaign No. 2012-CA-6, 2012-Ohio-4752, ¶ 17 ("a QDRO which varies from the division of pension plan benefits ordered in a decree of divorce or dissolution in violation of R.C. 3105.171(I) * * * is voidable for error").

**{¶20}** For present purposes, it is enough that the March 2, 2006 QDRO, inasmuch as it contradicted the division of property set forth in the divorce decree, afforded Karen no legal justification for retaining funds that accrued and vested outside the duration of the marriage.

**{¶21}** The Ohio Supreme Court has often affirmed that "[t]he power of a court to enforce its own proper orders is fundamental and inherent." *Wind v. State*, 102 Ohio St. 62, 64, 130 N.E. 35 (1921). Likewise, in the domestic relations context, it is recognized that "[e]ven in the absence of jurisdiction to modify a property distribution, a trial court retains 'full power' to enforce the provisions incorporated into a divorce decree." (Citation omitted.) *Pontious v. Pontious*, 4th Dist. Ross No. 10CA3157, 2011-Ohio-40, ¶ 11; *Dyrdek v. Dyrdek*, 4th Dist. Washington No. 09CA29, 2010-Ohio-2329, ¶ 10 (cases cited); *Krechman v. Krechman*, 110 Ohio App. 554, 556, 170 N.E.2d 91 (6th Dist.1959) ("where a divorce judgment contains provisions with respect to property rights *in futuro* or of an executory nature, the court entering such judgment impliedly reserves continuing jurisdiction to construe, enforce or implement the rights secured by such provisions by the entry of a judgment ancillary in nature to enforce compliance with the terms of the original judgment").

**{¶22}** In the present case, the domestic relations court has inherent authority to order Karen to return funds distributed to her in contravention of the terms of the decree of divorce. The exercise of this authority in similar situations has been recognized by this and other courts. *Gula v. Gula*, 11th Dist. Lake No. 97-L-024, 1997 Ohio App. LEXIS 4589, 7 (Oct. 10, 1997) ("a trial court always has 'full power' to enforce its judgments," and so "did not abuse its discretion in * * * correcting the payment error that was caused by the delay in the filing of the QDRO"); *Baker v. Paluch*, 9th Dist. Summit No. 22078, 2004-Ohio-6744, ¶ 11 ("the trial court did in fact have the necessary jurisdiction to compel Mr. Paluch to return the money wrongfully distributed to him under its erroneous QDRO"); *Oliver-Pavkovich v. Pavkovich*, 7th Dist. Mahoning No. 02 CA 223, 2003-Ohio-6718, ¶ 25 (where "[t]he first QDRO was issued against [the participant's] savings plan rather than his pension plan," thus "violat[ing] the terms of the divorce decree * * *, the trial court had jurisdiction to issue a QDRO against [the] pension plan even though it already issued one QDRO").

**{¶23}** The sole assignment of error is without merit.

**{¶24}** For the foregoing reasons, the Judgment Order of the Trumbull County Court of Common Pleas, Division of Domestic Relations, adopting the Magistrate's Decision to issue an amended QDRO and order Karen to return funds received under the prior QDRO, is affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.

7