[Cite as *Bittner v. Bittner*, 2017-Ohio-7498.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| DOLORES I. BITTNER | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 16 CAF 10 0043 |
| EDWARD J. BITTNER | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Civil appeal from the Delaware County
Court of Common Pleas, Domestic
Relations Division, Case No. 12 DR B 01
0010

JUDGMENT:        Affirmed in part; Reversed and Remanded
in part

DATE OF JUDGMENT ENTRY:        September 6, 2017

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

JAY WAGNER        ROBERT OWENS
P.O. Box 576        46 N. Sandusky St.
118 Harding Way West        Suite 202
Galion, OH 44833        Delaware, OH 43015

*Gwin, P.J.*

{¶1} Appellant appeals the judgment entries of the Delaware County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2} Appellant, Edward Bittner ("Husband"), and appellee, Dolores Bittner ("Wife"), were marred on July 30, 1983. The parties were divorced via an agreed judgment entry decree of divorce filed on November 6, 2012. As of the date of the agreed judgment entry, Husband was employed by the Ariel Corporation ("Ariel").

{¶3} In the agreed judgment entry, Husband agreed to pay Wife spousal support of $8,000 per month beginning on November 1, 2012, and on the first day of each month thereafter for a term of twelve years. The parties agreed the trial court would retain and reserve jurisdiction to modify the amount of the spousal support obligation, but would not retain or reserve jurisdiction to modify the term (duration) of spousal support.

{¶4} In Section 11(B) of the agreed judgment entry, the parties agreed Husband would take, free and clear of any claims by Wife, all rights, title, and interest in and to the Fidelity Investments/Ariel Corporation Employee Retirement Plan, a 401(K) plan.

{¶5} Section 11(C) of agreed judgment entry deals with Husband's Ariel Corporation Profit Sharing Plan and provides that Wife shall be awarded and shall take, have, and own, free and clear of any claims by Husband, one half the balance of the Ariel Corporation Profit Sharing Plan in Husband's name. Further, that said balance of the Ariel Corporation Profit Sharing Plan shall include any and all contributions thereto for 2012 that currently are earned (whenever such contributions are paid into the plan). The parties agreed this division would be made by a proper Qualified Domestic Relations

Order ("QDRO"). The parties also agreed that Wife's share of the Ariel Corporation Profit Sharing Plan "shall include" gains and losses on a pro rata basis from the date that 2012 contributions are made until the QDRO is approved and implemented, or until the transfer of Wife's shares are completed.

{¶6} In Section 11(D) of the agreed judgment entry, the parties agreed Wife shall be awarded, free and clear of any claims by Husband, one-half of the balance of the Fidelity Rollover IRA (-2256) in Husband's name as of October 31, 2012, including gains and losses on a pro rata basis from October 31, 2012 until the transfer is completed. The parties agreed the division would be made by a proper QDRO or a rollover approved by the parties.

{¶7} On October 8, 2013, Wife filed a motion for contempt, claiming Husband failed to pay spousal support and the college obligation pursuant to the agreed judgment entry. Wife sought funds from Husband's interests in his investment accounts to satisfy his obligations.

{¶8} The trial court filed a QDRO on November 18, 2013 for the "Ariel Corporation Profit Sharing Plan." The QDRO assigned to Wife 50% of Husband's total account balance accumulated under the Plan as of December 31, 2012.

{¶9} In a December 2, 2013 pleading, counsel for Ariel stated the QDRO filed on November 18, 2013 could not be accepted by Ariel as a QDRO because it lists the incorrect plan name and the correct plan name for the Ariel profit sharing plan is the "Ariel Corporation Employee Retirement Plan."

{¶10} Accordingly, on March 25, 2014, the trial court entered an Amended QDRO for the "Ariel Corporation Employee Retirement Plan" that assigned to Wife as alternate

payee a portion of Husband's total account balance under the Plan in an amount equal to $335,344.47, effective as of December 31, 2012. The Amended QDRO provides, "this amended QDRO supersedes, nullifies, and replaces in its entirety the previously executed QDRO."

**{¶11}** A magistrate held a hearing on Wife's motion for contempt on April 14, 2014. By decision filed April 18, 2014, the magistrate found Husband was in arrears on his spousal support obligation in the amount of $60,861.47 and he had not paid on his college obligation. The magistrate ordered Ariel to allocate $60,861.47 from the profit sharing account to satisfy the arrearage, and to distribute the spousal support amount from the profit sharing account each month. The magistrate also ordered Husband to pay Wife $22,000 for the unpaid college expenses and $4,602 for attorney fees.

**{¶12}** All parties filed objections. A hearing was held on January 23, 2015. On February 5, 2015, the trial court adopted the magistrate's finding of a $60,861.47 arrearage, and ordered that a supplemental QDRO shall issue to reallocate that amount, plus a 2% administrative fee, to Wife from the profit sharing account. The trial court found Husband in contempt for failing to pay on his spousal support obligation, and ordered him to serve thirty days in jail subject to purge. The trial court also ordered Husband to pay Wife $4,602.00 for attorney fees. On February 25, 2015, the trial court entered a Supplemental QDRO for the Ariel Corporation Employee Retirement Plan, assigning to Wife a portion of the Plan in the amount of $60,861.47, plus a 2% administrative fee, for a total of $62,078.69, effective April 1, 2014.

**{¶13}** Husband filed an appeal of the trial court's decision and argued: the trial court erred by modifying a division of martial assets after the court journalized a divorce

decree; the trial court erred by attaching exempt funds in a pension account where the plan-participant spouse was not receiving distributions from the account; and the trial court erred in awarding attorney's fees on appellee's motion for contempt.

{¶14} In *Bittner v. Bittner*, 5th Dist. Delaware No. 15 CAF 03 0024, 2015-Ohio-4707, we overruled appellant's assignments of error, finding: the trial court did not err in ordering a supplemental QDRO to satisfy spousal support arrearage because the parties agreed the trial court could exercise jurisdiction on the issue; the trial court did not err in ordering an attachment of the account when the account was not in payoff status due to the clear agreement of the parties in their agreed judgment entry of divorce; and the trial court did not err in awarding attorney fees.

{¶15} Wife filed several motions for contempt, each time arguing Husband failed to pay spousal support. Husband filed a motion for modification of spousal support and argued he suffered substantial loss in income due to material changes in the economy and industry.

{¶16} Husband also filed a motion for an order and related relief pursuant to Rule 60(A). Husband argued the Amended QDRO contained an assessment date different from the divorce decree, as pursuant to the divorce decree, all valuations of marital property were to be as of October 31, 2012 and the Amended QDRO mistakenly included a valuation date of December 31, 2012. Husband requested an amendment to the QDRO reflecting the proper valuation date of October 31, 2012.

{¶17} The trial court held a hearing on July 29, 2016 on the pending motions. Prior to the hearing, the parties stipulated Husband's spousal support arrearage as of June 30, 2016 was $228,362.71. The parties also stipulated that, pursuant to the divorce decree,

Husband was supposed to get one-half of the value of four accounts, totaling $170,119.78. After being given credit for the $170,119.78, Husband owed $58,242.93 in spousal support.

{¶18} Wife testified she remembered the Fidelity account with the last four digits of (-2256), that it was supposed to be divided equally between she and Husband, and that Husband's name was on the account at the time of the divorce. Wife stated a QDRO was never issued pertaining to that account. Rather, the asset was divided without the use a QDRO. Wife testified she and Husband each wrote a letter of intent to divide the (-2256) account and they each sent their letters to the same person, the person they were working with at Fidelity. Wife stated the (-2256) Fidelity account was divided equally between the parties at the end of January 2013.

{¶19} David Stuller ("Stuller") is the Chief Financial Officer at Ariel and is the administrator of Ariel's retirement plan. Stuller testified half of the account balance in the profit sharing plan as of January 16, 2014 was $335,344. Stuller stated that though the division date was listed as December 31, 2012, plus earnings, using the account balance in 2014 would have resulted in earnings being counted twice for 2013 and the first sixteen days of January. Stuller testified he believes the amount mistakenly given to Wife was $72,252.98. Stuller stated that, prior to December 31, 2012, the profit sharing plan was separate from the 401(k) plan. However, on December 31, 2012, the plans were administratively merged and were reflected in one statement.

{¶20} On cross-examination, Stuller testified Husband brought it to his attention that there was an overage on the distribution. Stuller stated there would have been contributions into the plan for 2013 for the benefit of Husband that he earned in 2012.

Stuller testified the funds were not actually divided until May of 2014 even though the Amended QDRO was dated in March of 2014. Stuller stated such a division in May of 2014 would include appreciation or depreciation, depending on the market. When asked, "who made the error in computations," Stuller testified, "there was not an error in the computation." Stuller continued, "there was an unintended error." Stuller stated he does not know who made the error.

{¶21} Stuller testified when the Amended QDRO was prepared, Ariel's counsel reviewed it, approved it, and that Ariel's counsel provided the figures contained in it. Stuller stated that, pursuant to the divorce decree, the parties were only splitting one component of the account as they would split the profit sharing piece and Husband would retain the 401(k) piece. Stuller confirmed that while the date on which the plan was to be divided was December of 2012, Wife was also to get all profits and losses in the plan until the actual date of division and any contributions made in 2013 for 2012.

{¶22} On re-direct, Stuller stated on May 5, 2014, $412,369 was transferred from Husband's Fidelity account to Wife's Fidelity account, which was more than the amount specified in the Amended QDRO. Stuller testified Fidelity divides the accounts automatically and he cannot manually change these divisions. Stuller believes the division date of December 31, 2012 does not align with the statement date for the amount in the Amended QDRO as of January 16, 2014. Stuller testified he missed it when reviewing the Amended QDRO, it appeared to be fine, and he approved the Amended QDRO.

{¶23} When questioned by the trial court, Stuller testified the actual name of the profit sharing plan is the Ariel Corporation's Employee Retirement Plan. Further, that the

$335,344.47 awarded to Wife represented one-half of the profit sharing component. Stuller testified once the Amended QDRO was issued, Fidelity divides the amounts up and automatically and electronically put the funds in Wife's account.

{¶24} Husband testified his last day of employment with Ariel was December 15, 2012, when he resigned and went to work for a customer of Ariel's called PSE Engineering Services, LLC ("PSE"). PSE is based in Moscow and Husband started working for them on December 24, 2014. Husband testified he is not currently employed and was last employed on February 29, 2016. Husband stated his business went down because Russia invaded Ukraine, the sanctions on Russia, and due to the collapse of oil prices. At PSE, Husband promoted the sale of their product, which required a specialized skill set.

{¶25} Husband testified in order to obtain employment, he contacted companies like Cibet, National Fuel Gas, and Ariel, and the companies had no job openings. Husband stated his skill set is in sales, marketing, international distribution, and mechanical engineering. Husband interviewed at Ambrell and Praxair. Husband stated he spends twenty-five hours per week on the Internet seeking employment, going to interviews, and sending out resumes. Husband believes the salary range of a new job would be from $60,000 to $90,000.

{¶26} On cross-examination, Husband testified that, as of 2012, he had been employed with Ariel for twenty years. Husband has not written any checks to CSEA and has not had his wages withheld for spousal support. Husband confirmed his LinkedIn page says he is still sales director of PSE. Husband stated this is because if you are looking for a job, it is good to show you have a job.

{¶27} Husband remarried on June 4, 2014. His new wife is employed by PSE and Husband testified she makes about $12,000 per year. Husband stated they live together and her income goes toward household expenses. Husband filed tax returns for 2013, 2014, and 2015. However, he did not know what his income was on his tax returns each year. Husband testified he bought a home in Fairport, New York in April of 2016 for $279,000. He purchased the home with cash from his savings. Husband gets paid consulting fees in addition to his wages that he does not claim on his tax returns because they are not wages per the rules of the Internal Revenue Service.

{¶28} At the end of the hearing, the trial court remanded Husband to the Delaware County Jail to begin serving his 30-day sentence for contempt that was imposed at the February 5, 2015 hearing for the failure to pay spousal support since Husband had not paid any of this spousal support. The trial court stated Husband could purge himself of this contempt and his jail sentence would be suspended if he brought all spousal support arrearages current.

{¶29} The trial court issued a judgment entry on September 6, 2016. The trial court granted a QDRO for spousal support arrearage of $58,242.93, together with attorney fees, directed to Husband's share of the Ariel Corporation Employee Retirement Plan / Ariel Corporation Profit Sharing Plan.

{¶30} As to the Civil Rule 60(A) motion, the trial court found the testimony of Stuller concerning the alleged error and how it happened was "unclear, at best, as to who may have made this alleged miscalculation." Further, that though Stuller claimed any error was done automatically by Fidelity, who is not a party to the case, no one from Fidelity was called as a witness to testify.

{¶31} The trial court also found any alleged miscalculation, if true, is not a clerical mistake pursuant to Civil Rule 60(A), but would fall under Civil Rule 60(B) for mistake, inadvertence, or excusable neglect; however a Civil Rule 60(B) motion is barred by the one-year time requirement of the rule.

{¶32} The trial court concluded that Husband failed to establish the burden of proof that such an error was, in fact, made, and, even so, the motion would be barred by not bringing a Civil Rule 60(B) motion within one year. The trial court overruled Husband's Rule 60(A) motion.

{¶33} As to Husband's motion for modification of spousal support, the trial court found such modification is governed by R.C. 3105.18(F). The trial court found that while Husband's motion stated he has no idea if the industry will improve given the unstable political outlook, he testified under oath that his last date of employment with Ariel was on December 15, 2012 when he resigned and went to work for a customer, PSE, on December 24, 2012.

{¶34} Citing R.C. 3105.18(F)(1), the trial court found Husband left both Ariel and PSE voluntarily, having knowledge of his spousal support obligations. The trial court also noted that, despite his employment at Ariel and PSE from 2012 when he agreed to pay the spousal support, he did not pay anything towards his spousal support obligation during that time. The trial court found Husband's testimony about his income from Ariel and PSE "conveniently vague," as was his memory of his tax returns. The trial court stated that even though Husband's testimony about his income and tax returns was vague, he did testify he purchased a residence in New York at the end of April 2016 for $279,000 in cash. The trial court concluded, based upon the testimony and evidence,

there was not a change in circumstances outlined in R.C. 3105.18, and denied Husband's motion for modification of spousal support.

{¶35} On August 12, 2016, Wife filed a motion to impose sentence. The trial court conducted another hearing on September 6, 2016 on Wife's motion to impose sentence. Husband did not attend the hearing.

{¶36} Joyce Bowens ("Bowens"), Director of the Delaware CSEA testified Husband's attorney appeared at the agency on July 29, 2016 to present a check for $58,242.93 made payable to the CSEA. The check was drawn on a personal account of Husband's attorney, Robert Owens ("Owens"). Bowens stated Owens intended those funds to be applied towards Husband's spousal support arrears. Bowens gave Owens a receipt. Owens returned to the CSEA office on August 3, 2016 and informed Bowens there might be an issue with the original check and said it probably would not go through. He brought a second check, which was a third party check, payable to him, which he signed over to the CSEA. Bowens told him they could not take the check.

{¶37} Bowens was holding the check and was on the phone with the CSPC on how to resolves the situation when Owens said he needed to leave and told her to call him on his cell phone. Bowens called on August 3, 2016 and left a message. She called Owens again on August 8, 2016 and left a message. She also called Owens' law office on August 8, 2016 and he called her back on August 9, 2016. Bowens suggested to Owens a wire transfer and Owens asked her to e-mail him the account and routing number, so Bowens assumed that was what he was going to do. Bowens testified the first check was returned because a "stop payment" was placed on the check. Bowens never received an electronic transfer of funds from Owens.

{¶38} Bowens left messages for Owens on August 11, 2016 and August 16, 2016. Owens called her back on August 18, 2016 and said Husband was trying to resolve the issue. Owens told Bowens he would need to come get the third-party check to deposit in order to complete the wire transfer. Husband called Bowens on August 18, 2016 and was not aware there was an issue with payment. Bowens stated Owens never came to get the check and, on August 22, 2016, a deputy delivered it to his office. CSEA received a third check, from Husband's new wife, on August 23, 2016. CSPA got the check on August 29, 2016 and it was put on a fifteen-day hold. The check had not yet cleared as of the date of the hearing.

{¶39} Mary Jones ("Jones") is a vice-president of operations and IT manager at Fidelity Federal Savings and Loan. Jones testified the balance in Owens' account as of July 29, 2016 was $79,070.03. There were no deposits in July or August of $58,000. Jones stated Owens signed a document on August 2, 2016 asking that the July 29, 2016 check be stopped, despite the fact that there was sufficient balance in the account to clear the check. Wife testified at the hearing as to attorney fees she incurred.

{¶40} The trial court issued a judgment entry on September 19, 2016. In its judgment entry, the trial court reviewed the testimony and evidence. The trial court found Husband, with assistance of his counsel, employed a scheme that intentionally avoided the trial court's order that Husband be remanded to jail for contempt for failure to pay spousal support ordered by the trial court. The trial court stated that after Husband was placed in jail, his counsel presented a counter check on his trust account to the CSEA and they, acting in good faith, gave counsel a receipt which counsel used to secure Husband's release from jail. Husband's counsel then stopped payment on this trust

account check and, over the next month, presented a third-party check, got routing numbers for an alleged electronic transfer, gave excuses to the CSEA, and still, by the end of August, Husband had not brought his spousal support current.

{¶41} The trial court remanded Husband to the Delaware County Jail to begin serving his 30-day sentence for contempt. The trial court found Husband could purge himself of contempt and be released from jail if he brought all spousal support as of September 19, 2016 current on the records of CSEA. The trial court awarded Wife attorney fees in the amount of $1,809.60.

{¶42} Husband appeals the September 6 and September 19, 2016 judgment entries of the Delaware County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶43} "I. THE TRIAL COURT ERRED BY DETERMINING THERE WAS NO ERROR IN THE QDRO AND BY RULING THAT THE QDRO SHOULD NOT BE CHANGED TO REFLECT THE DIVORCE DECREE.

{¶44} "II. THE TRIAL COURT ERRED BY NOT FINDING A CHANGE IN CIRCUMSTANCES.

{¶45} "III. THE TRIAL COURT ERRORED WHEN CALCULATING DEFENDANTS ARREARAGES AND ALL SUBSEQUENT ORDERS BASED ON SAID ARREARAGES."

I.

{¶46} In his first assignment of error, Husband argues the trial court erred by determining there was no error in the Amended QDRO and by ruling that the Amended QDRO should not be changed to reflect the divorce decree.

**{¶47}** We will not reverse a trial court's decision regarding relief from judgment pursuant to Civil Rule 60(A) absent an abuse of discretion. *Strack v. Pelton*, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994). To find an abuse of discretion, this Court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶48}** Civil Rule 60(A) permits a court to correct only clerical errors arising from an oversight or omission and states that "clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." The Ohio Supreme Court has stated that Civil Rule 60(A), "permits a trial court, in its discretion, to correct clerical mistakes which are apparent on the record, but does not authorize a trial court to make substantive changes in judgments." *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 671 N.E.2d 236 (1996). Under Civil Rule 60(A), a clerical mistake refers to a mistake or omission that is mechanical in nature and does not involve a legal decision or judgment. *Id.*

**{¶49}** In *Himes v. Himes*, 5th Dist. Tuscarawas No. 2004AP02009, 2004-Ohio-4666, a QDRO was filed, but the QDRO was contrary to separation agreement. The appellant argued the trial court erred in granting a motion for relief where the appellee did not meet the requirements of Civil Rule 60(B). *Id.* We noted that a QDRO is not an independent judgment entry of the court, but rather an enforcement mechanism pertaining to the court's previous judgment entry incorporating the parties' agreement.

*Id.*; *Binder v. Binder*, 8th Dist. Cuyahoga No. 88468, 2007-Ohio-4038; *Angelo v. Angelo*, 11th Dist. Trumbull No. 2012-T-0094, 2013-Ohio-5265.

**{¶50}** We held, in *Himes*, that because the QDRO did not follow the terms of the separation agreement and did not comply with the decree, the QDRO was void ab initio and could be vacated by the trial court in accordance with its inherent authority. *Id.* Further, that the motion to vacate did not have to comply with Civil Rule 60(B) as it was void due to the conflict with the terms of the separation agreement and divorce decree. *Id.*

**{¶51}** In *Merkle v. Merkle*, 5th Dist. Licking No. 13-CA-31, 2014-Ohio-81, this Court found a Civil Rule 60(A) motion was not appropriate because the requests made by the appellant in her motion went beyond the scope of correcting a clerical error or blunder in execution as the appellant was attempting to change the division of the pension and retirement accounts. Further, Civil Rule 60(A) was not applicable because it would substantively alter the divorce decree. *Id.* We found Rule 60(A) cannot be utilized to correct such a mistake and cannot be applied to change something that was deliberately done. *Id.*

**{¶52}** Through his pleadings and during the hearing, Husband asserted various theories as to why a Civil Rule 60(A) motion should be granted as it applies to the Amended QDRO.

**{¶53}** In Husband's Rule 60(A) motion filed on March 21, 2016, Husband argued the Amended QDRO was incorrect and subject to a Civil Rule 60(A) correction because the assessment valuation date contained in the Amended QDRO (December 31, 2012) was incorrect and should have been October 31, 2012. We find the trial court did not

abuse its discretion in denying Husband's motion as to these dates. In the agreed judgment entry, section 11(C), the parties agreed Wife would get ½ of the Ariel Corporation Profit Sharing Plan, "including contributions for 2012." Pursuant to section 11(D) of the divorce decree, the parties agreed to split the balance in the Fidelity Rollover IRA (-2256) as of October 31, 2012.

{¶54} Wife testified she remembered the Fidelity Rollover IRA (-2256). She testified a QDRO was never issued pertaining to that account. Rather, the asset was divided without the use of a QDRO. Wife stated she and Husband each wrote a letter of intent to divide the account and they each sent their letters to the person they were working with at Fidelity. Wife testified the Fidelity account (-2256) was divided equally between the parties at the end of January 2013. Husband did not offer any testimony or evidence to dispute Wife's testimony. There is no mention of the Fidelity Rollover IRA (-2256) in the Amended QDRO. The October 31, 2012 date applied to the Fidelity Rollover IRA (-2256). The December 31, 2012 date applies to the profit sharing plan, which was divided by the Amended QDRO. Since the Fidelity Rollover IRA (--2256) was not divided in the QDRO, the trial court did not abuse its discretion in overruling the motion as to the October/December date discrepancy as a change in the profit sharing valuation date to October 31, 2012 would be a substantive change to the decree of divorce.

{¶55} Also in his Rule 60(A) motion, Husband argued the trial court should correct the Amended QDRO, as the Profit Sharing Account and Fidelity Rollover IRA were inappropriately merged, in violation of the divorce decree. As discussed above, the evidence and testimony provide the Fidelity Rollover IRA was divided between the parties in 2013 and not subject to the Amended QDRO. Thus, the trial court did not abuse its

discretion in overruling Husband's motion as this would constitute a substantive change to the decree of divorce.

**{¶56}** At the hearing on Husband's Civil Rule 60(A) motion, Husband argued two different theories as to why the Amended QDRO should be altered to comply with the divorce decree.

**{¶57}** Husband first argues that the Amended QDRO should be altered pursuant to Civil Rule 60(A) because the $335,344 amount listed in the Amended QDRO is actually the value of the plan as of January 16, 2014, not December 31, 2012, as agreed to in the parties' divorce decree. Stuller testified that half of the profit sharing account as of January 16, 2014 was $335,344 and though the division date was listed as December 31, 2012, using the account balance of 2014 would have resulted in earnings being counted twice for 2013 and the first sixteen days of January 2014.

**{¶58}** However, on cross-examination, Stuller stated he did not know who made the alleged error, as Ariel's counsel provided the figures for the Amended QDRO. When asked who made the error in the computation, Stuller first testified, "there was not an error in the computation" and then stated, "there was an unintended error." Stuller stated that the funds were not actually divided until May of 2014 and that Wife was to share in the profits and losses in the profit sharing plan until the actual date of division. Stuller missed this when reviewing the Amended QDRO, as it appeared to be fine.

**{¶59}** We find the trial court did not abuse its discretion in finding the testimony of Stuller with regards to this error to be "unclear" and in finding this alleged error would be more than a clerical error or blunder in execution. While Stuller testified the $335,344 represented a division date of January 16, 2014 instead of December 31, 2012, Stuller

also testified the funds were not actually divided until May of 2014 and Wife was to share in the profits and losses in the profit sharing plan until the actual date of division. It is unclear how the actual date of division and the fact that Wife was to share in the profits and losses in the profit sharing plan until the actual date of division impacts this alleged error in the QDRO. Thus, the request made by Husband goes beyond the scope of merely correcting a clerical error and instead requires a legal judgment and decision that would have to be brought to the attention of the trial court through a Civil Rule 60(B) motion. *Merkle v. Merkle,* 5th Dist. Licking No. 13-CA-31, 2014-Ohio-81. Accordingly, we find the trial court did not abuse its discretion in denying Husband's Civil Rule 60(A) motion to the extent that Wife was awarded the sum of $335,344.

{¶60} Second, Husband contends the trial court erred in denying his motion because his 401(K) plan, which was supposed to be retained by him, was split by Fidelity to comply with the Amended QDRO, as the Amended QDRO listed the name of the plan that merged the 401(K) retirement plan with the profit sharing plan. Because of the name of the plan in the Amended QDRO, $412,369 was transferred to Wife, instead of the $335,344 amount in the QDRO. We agree with Husband's argument.

{¶61} Stuller testified the profit sharing plan the parties were to split and the 401(K) retirement plan awarded to Husband were administratively merged and thus were contained in one statement. Further, that on May 5, 2014, $412,369 was transferred from Husband's Fidelity account to Wife's Fidelity account, which was more than the $335,344 amount specified in the Amended QDRO.

{¶62} As is evidenced in Exhibit 4 and Exhibit B, though the balances from each plan were administratively merged, the balances from each plan are still reflected

separately on the parties' Fidelity statements.  Though no one from Fidelity testified, it is clear from the Fidelity statements and transaction history admitted into evidence (Exhibits C, D, and F) that while the profit sharing plan was properly split per the divorce decree, the 401(K) plan Husband was awarded was also split between the parties.  Wife was awarded a total of $52,290.36 from the 401(K) plan in May of 2014 (Exhibit F).

**{¶63}** The divorce decree clearly provides that Husband gets all of the Fidelity IRA plan, while Wife shares equally in the profit sharing plan.  The evidence shows the plans were both split between Husband and Wife, in contravention of the divorce decree. In this case, a corrected judgment entry would not create new rights, but would merely grant Husband the rights originally agreed to and intended in the divorce decree.  *Bracken v. Bracken*, 6th Dist. Huron No. H-15-008, 2015-Ohio-5307.  Such a requested alteration would not substantively alter the divorce decree or change something which was deliberately done, but would merely correct an error that inadvertently altered the divorce decree.  *Himes v. Himes*, 5th Dist. Tuscarawas No. 2004AP02009, 2004-Ohio-4666; *Angelo v. Angelo*, 11th Dist. Trumbull No. 2012-T-0094, 2013-Ohio-5265; *Brownlee v. Brownlee*, 8th Dist. Cuyahoga No. 94494, 2010-Ohio-5602.  As we stated in *Himes*, when a QDRO does not comply with the divorce decree, the motion to vacate does not have to comply with Civil Rule 60(B).  Accordingly, we find the trial court abused its discretion in denying Husband's Civil Rule 60(A) motion as to the inadvertent split of his 401(K) account in the amount of $52,290.36.

**{¶64}** Husband's first assignment of error is overruled in part and sustained in part.

II.

**{¶65}** In his second assignment of error, Husband contends the trial court erred in not finding a change in circumstance and in denying his motion to modify spousal support. Husband argues his testimony was not vague, the trial court ignored large-scale world events such as the Russian economy collapse and the drop of oil and gas prices, and the trial court erred by considering whether he previously paid spousal support.

**{¶66}** Modifications of spousal support are reviewable under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). The burden of establishing the need for modification of spousal support rests with the party seeking modification. *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967.

**{¶67}** R.C. 3105.18(E) governs the trial court's consideration in modifying an existing spousal support order and provides the court does not have jurisdiction to modify the amount or terms of the spousal support unless there is incorporated into the decree a provision specifically authorizing the court to modify the amount or terms of spousal support. In this case, the parties agreed the trial court would retain and reserve jurisdiction to modify the amount of the spousal support obligation, but would not retain or reserve jurisdiction to modify the term (duration) of spousal support.

**{¶68}** R.C. 3105.18(E) also provides the court does not have jurisdiction to modify the amount of spousal support unless the court "determines that the circumstances of either party have changed." R.C. 3105.18(F) provides a change of circumstances,

"includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances." In order to constitute a basis for modifying spousal support, the change of circumstances must be material, not purposely brought about by the moving party, and not contemplated at the time the parties entered into the prior agreement or order. *Waters v. Boney*, 5th Dist. Stark No. 2008-CA-00127, 2009-Ohio-574.

{¶69} Husband argues the trial court's characterization of his testimony as "vague" is incorrect and was in error. We disagree. We first note the trial court is vested with the authority to assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trial court is the fact finder and is free to believe all, some, or none of the testimony. *Id.* The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We further find the trial court's summation of the evidence is consistent with Husband's testimony. While Husband testified he filed tax returns for 2013, 2014, and 2015, he did not know how much income he made in each of those years. Further, Husband could not definitively testify as to how much income he could possibly make in a new position and was unsure about how much income he would make since his income is made up of his wages and consulting fees in addition to wages.

{¶70} Husband next argues the trial court improperly considered his previous failure to pay spousal support when deciding his motion for modification. We disagree. While the trial court did note Husband's failure to previously pay spousal support, we find this note dispositive of the decision of the trial court as the trial court separately discussed

the voluntariness of Husband's decision. Further, we find the trial court's note on this issue to be an assessment of the credibility of Husband's testimony, which is an assessment that the trial court is vested with the authority to make. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶71} Husband contends the trial court ignored world events such as the collapse of the Russian economy and the drop of the oil and gas prices and the effect it has on his employment. We disagree. Husband testified his business went down because Russia invaded Ukraine, the sanctions on Russia, and due to the collapse of oil prices. The trial court is the fact finder and is free to believe all, some, or none of Husband's testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Further, as noted by the trial court, Husband had worked in the oil and gas industry at Ariel for over twenty years and thus worked in this industry at the time he agreed to pay the $8,000 per month in spousal support.

{¶72} Further, in *Kuhn v. Kuhn*, this Court considered a temporary downturn in the economy as it related to a modification of spousal support request. 5th Dist. Richland No. 10CA86, 2011-Ohio-307. The appellant in that case failed to present any evidence to establish his income could not again reach these figures. *Id.* In this case, Husband could not even testify to his income in 2013, 2014, or 2015, and did not present any evidence that his income could not again reach the figure used when the agreed judgment entry was entered. While Husband stated he believes the salary range of a new job would be from $60,000 to $90,000, he was vague as to whether these figures included the "consulting" fees he received that were not considered wages by the IRS and consequently not included on his tax returns.

**{¶73}** Additionally, a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18, and we may not assume the evidence was not considered. *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967.

**{¶74}** Husband finally argues the trial court abused its discretion in finding his change of circumstances in income was voluntarily and foreseeable. We disagree. "Although a change in circumstances may be considered in a modification request, it must not be purposely brought about by the complaining party." *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967. On November 6, 2012, Husband agreed to pay Wife $8,000 per month in spousal support for twelve years. Approximately forty days later, after working at Ariel for twenty years, Husband voluntarily quit Ariel to work for PSE. Though Husband testified he ended his employment at PSE at the end of February 2016, his LinkedIn Account page stated he was still working at PSE as of July of 2016.

**{¶75}** Husband did not know his income for the years 2013, 2014, or 2015. Husband testified his "consulting" income was not contained in his tax returns and could not testify to how much this was in 2013, 2014, 2015, or 2016. Husband did not submit a financial affidavit, he did not present an itemization of his expenses, and did not testify to his expenses. Additionally, Husband purchased a home in New York with cash for $279,000 in April of 2016, after he testified he was out-of-work for two months. Husband remarried in 2014 and stated he lives with his new wife and her income goes to household expenses. While a new spouse's income cannot be considered in determining Husband's ability to pay spousal support, the court may consider the fact that Husband directly

benefits from sharing living expenses with his new wife. *Fisher v. Fisher*, 5th Dist. Fairfield No. 2008 CA 00049, 2009-Ohio-4739.

**{¶76}** It is Husband's burden to establish the need for modification. In this case, the trial court found Husband's testimony was "conveniently" vague and, upon our review of the record, we find the trial court did not abuse its discretion in finding there was no substantial change in circumstances pursuant to R.C. 3105.18(F). Husband's second assignment of error is overruled.

III.

**{¶77}** In his third assignment of error, Husband contends that if his first assignment of error is sustained, he will have made an excessive payment to Wife in the amount of $72,252.98. Alternatively, Husband argues if his second assignment of error is sustained, his new spousal support award amount will relate back to the time of the filing. Thus, either of these would alter or eliminate any arrearage Husband had and thus a motion for contempt would be improper, as would a sentence of thirty days in jail, and an award of attorney fees to Wife.

**{¶78}** The trial court issued its finding of contempt, thirty-day sentence, and award of attorney fees in its February 5, 2015 judgment entry. Husband appealed this entry. He did argue the trial court erred in awarding attorney fees, but did not assign as error the finding of contempt or the thirty-day jai sentence. Accordingly, his arguments are barred by res judicata, which prevents relief on successive, similar motions which were or could have been raised originally. *Van Wert v. Akron Metro. Regional Transit Auth.*, 5th Dist. Stark No. 2016CA00052, 2016-Ohio-8072; *Coulson v. Coulson*, 5 Ohio St.3d 12, 448 N.E.2d 809 (1983). Husband is attempting to relitigate issues he did raise and issues

he could have, but failed to raise, in his original appeal of the February 5, 2015 judgment entry.

{¶79} Further, we overruled Husband's assignment of error as to spousal support and thus, his arrearage amount remains the same. We overruled in part and sustained in part Husband's first assignment of error. We found Husband made an excessive payment to Wife in the amount of $52,290.36. Husband was found in contempt for owing spousal support in the amount of $58,242.93. Even taking into consideration the $52,290.36 amount, Husband failed to pay spousal support arrearage of $5,952.57. As of the date of the hearing (September 6, 2016), no check had cleared and Husband had not paid any spousal support arrearage. Accordingly, Husband's third assignment of error is overruled.

{¶80} Based on the foregoing, Husband's first assignment of error is affirmed in part and reversed and remanded in part. Husband's second and third assignments of error are overruled.

By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur