[Cite as *Boron v. Boron*, 2019-Ohio-714.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| JULIA BORON | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2018CA00080 |
| JOHN BORON | : | |
| | : | |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of
Common Pleas, Domestic Relations
Division, Case No. 2014DR00157

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:      February 26, 2019

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

RAYMOND BULES                    PAUL HERVEY
Mills, Mills, Fiely & Lucas            Day, Ketterer, LTD
101 Central Plaza South             200 Market Ave.North, Ste. 300
200 Chase Tower                    Canton, OH 44702
Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellant appeals the May 30, 2018 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division, adopting and approving the magistrate's decision denying his motion for modification or termination of spousal support and motion for termination of child support.

### Facts & Procedural History

{¶2} In 2014, Husband John Boron and Wife Julia Boron dissolved their marriage with a separation agreement and agreed shared parenting plan. The parties agreed Husband would pay Wife $400 per month in child support.

{¶3} The separation agreement provides as follows regarding spousal support: "Husband shall pay to the Wife, as and for Spousal Support, the sum of $1250.00 per month for a period of ninety-six months subject to earlier termination upon the death of either party, the Wife's remarriage or co-habitation with an unrelated adult. The Court shall retain jurisdiction over the amount of spousal support but not the duration."

{¶4} On March 19, 2014, the trial court granted the parties' dissolution and approved and adopted both the separation agreement and the shared parenting plan.

{¶5} On November 15, 2017, Husband filed a motion to terminate or modify spousal support and child support. Wife filed a response in opposition to Husband's motion on November 28, 2017.

{¶6} The trial court held a hearing on Husband's motion on February 21, 2018 and April 11, 2018. Jeffrey Merriman ("Merriman") is the executive vice-president at GBS Corporation ("GBS"), Husband's previous employer. Merriman was previously the vice-president of sales and operations at GBS and was Husband's manager. Merriman

testified Husband did not meet his sales quotas for the last three to four years he was employed at GBS. Merriman stated he sent Husband a letter on April 6, 2015, placing him on probation. Merriman testified this letter meant that Husband had to sell more business or else the company would take steps to terminate him at the end of 2015. Merriman stated this was clearly relayed to Husband and Husband understood he needed to make changes and improve substantially to stay at GBS long-term. Merriman testified that one month after he sent Husband the letter, Husband resigned and it was Husband's decision to resign.

{¶7} On cross-examination, Merriman testified Husband had the opportunity to do whatever he could to achieve better results and GBS supported and assisted Husband's efforts to obtain sales when he needed it.

{¶8} Husband stated one of his major accounts at GBS had gone bankrupt and GBS was going to take a share of those production costs from Husband's commission checks. Husband testified he knew if he didn't produce very soon, he would be out the door, but he didn't want to leave. However, Husband thought he would be fired if he did not resign.

{¶9} Husband stated he waited thirty months to file his motion to modify spousal support because he fully intended to go back to work. Husband did not find many sales opportunities that he believed were viable because he did not want a job where he would receive a straight commission and no insurance benefits. Husband worked at Copeco for eight months. He was given the impression if he didn't produce at certain numbers, he would be gone. Husband now works at the deli counter at Acme. Husband testified he is not financially able to continue paying spousal and child support on his current

salary. Husband earns $8.75 per hour and works between 28 and 32 hours per week at Acme.

{¶10} On cross-examination, Husband testified he voluntarily resigned from GBS. Husband stated his production at GBS had already started to decrease before the dissolution. Husband believes the sales goals set for him by GBS were reasonable. Husband testified he made the determination to quit GBS when his opinion was he would not make the same amount of money anywhere else. Husband stated he was unemployed for twenty-two months before accepting the job at Copeco. During that twenty-two months, Husband walked his dog, worked out, and traveled. In Husband's last full year at GBS, he made $97,264.28. Husband filed an unemployment claim against GBS that was denied. Husband voluntarily quit at Copeco because he did not like selling copiers. Husband testified since he quit GBS he withdrew $300,000 from his retirement account and did this instead of obtaining a full-time job because he decided to take a break, enjoy life, gather his thoughts, and move on.

{¶11} Wife testified she opposes any reduction in the support obligation because she planned to use the money to help with college payment for the parties' son. Wife stated she has worked full-time since the dissolution of the marriage. Wife testified that she rolled her half of Husband's interest in GBS's employee stock ownership plan into an IRA that she has not touched since the dissolution.

{¶12} The magistrate issued an order on April 18, 2018. In his findings of fact, the magistrate found as follows: at the time of the dissolution, Husband was working for GBS, had been working there for approximately thirty-five (35) years, and was making $105,176.78; Wife was making $51,910.33 at the time of the dissolution; on May 8, 2015,

Husband voluntarily resigned from his job; Husband testified he was about to be terminated, so he resigned; Husband did not work for the following 21 months because he decided to "take a break, enjoy life, and gather his thoughts"; Husband eventually took a job working for Copeco as a salesman and voluntarily left this job; Husband now works at the deli counter at Acme making $8.75 per hour and works 28-30 hours per week; Husband is content at this job and does not appear to be looking for anything else; Husband claims that due to his current financial situation, he can no longer afford to pay the current spousal and child support obligations; Wife has been employed full time throughout and recently took a different job that will give her better hours and potential for increased income, along with health insurance for her and the minor child; Husband is required under the shared parenting plan to carry health insurance on the minor child but he fails to do so; Wife made $48,714 in 2017; Husband made $24,623.03 in 2017; Husband is voluntarily under-employed and income of $97,264.28 is imputed, as this is the amount Husband made in his final year at GBS.

{¶13} In the conclusions of law and decision portion of the magistrate's order, the magistrate stated modification of spousal support is governed by R.C. 3105.18(F) and modification of child support is governed by R.C. 3119.79. The magistrate stated Husband failed to show Wife was co-habitating with her paramour. The magistrate found Husband is voluntarily under-employed and is capable of earning an income more in line with the income he was making at the time of the divorce. The magistrate found that no modification/termination of spousal support is warranted at this time. The magistrate imputed $97,264.28 of income to Husband and found Husband has not demonstrated the

required deviations in incomes for a recalculation of child support.  Accordingly, the magistrate denied Husband's motion to modify spousal support and child support.

{¶14}  Husband filed objections to the magistrate's decision on April 27, 2018. Wife filed a response to Husband's objections on May 29, 2018.

{¶15}  On May 30, 2018, the trial court overruled Husband's objections and approved and adopted the magistrate's decision.  The trial court set the matter for an evidentiary hearing on attorney fees.

{¶16}  Appellant appeals the May 30, 2018 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶17}  "I. THE TRIAL COURT ERRED IN APPLYING THE WRONG LEGAL STANDARD TO A REVIEW OF SPOUSAL SUPPORT OBLIGATIONS.

{¶18}  "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THERE WAS NOT AN INVOLUNTARY DECREASE IN APPELLANT'S INCOME.

{¶19}  "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO REVIEW AND TERMINATE THE CHILD SUPPORT OBLIGATION."

I.

{¶20}  In his first assignment of error, Husband contends the trial court erred in applying the wrong legal standard to a review of spousal support obligations because the trial court focused on "voluntarily underemployment" and should have looked at whether there was an "involuntary decrease" in Husband's income and whether there was a substantial change of circumstances.  We disagree.

{¶21}  In this case, the trial court, it its conclusions of law section, specifically stated that R.C. 3108.18(F) governs the modification of spousal support and included in

its entry the text of that code section. It is clear from the findings of the magistrate that no modification of spousal support was warranted due to Husband's voluntary under-employment and capability to earn income in line with what he was making at the time of the dissolution that the magistrate found Husband failed to demonstrate a substantial change in circumstances because the decrease in income was voluntary.

{¶22} Similar to this case, in *Bittner v. Bittner*, the trial court found the appellant left his job voluntarily, with knowledge of his spousal support obligations, and thus there was no change of circumstances as outlined in R.C. 3105.18. 5th Dist. Delaware No. 16 CAF 10 0043, 2017-Ohio-7498. We held that the trial court did not abuse its discretion in finding no substantial change of circumstances because any such change of circumstance was voluntary and foreseeable and a change in circumstance may not be purposely brought about by the complaining party. In this case, similar to the *Bittner* case, the trial court noted Husband's testimony that he voluntarily resigned from his job when he felt he was going to be terminated and noted Husband's testimony that he did not work for the following 21 months because he decided to take a break, enjoy life, and gather his thoughts.

{¶23} Husband further argues if the trial court had reviewed the statutory factors contained in R.C. 3105.18, the trial court would have concluded a reduction of spousal support was in order. However, the trial court must consider the statutory factors listed in R.C. 3105.18(C) once a change of circumstances is found. Here, the trial court did not find a change in circumstances and thus no analysis of the statutory factors of R.C. 3105.18(C) is required.

{¶24} We find the trial court did not err in applying the wrong legal standard. Husband's first assignment of error is overruled.

II.

{¶25} In his second assignment of error, Husband alleges the trial court's decision not to modify or terminate his spousal support obligation was an abuse of discretion and not supported by the evidence.

{¶26} Decisions regarding the modification of spousal support are reviewable under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). The burden of establishing the need for modification of spousal support rests with the party seeking modification. *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967.

{¶27} R.C. 3105.18(E) provides the court does not have jurisdiction to modify the amount of spousal support unless the court "determines that the circumstances of either party have changed." R.C. 3105.18(F) provides a change of circumstances, "includes, but is not limited to, any increase or involuntarily decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances." In order to constitute a basis for modifying spousal support, the change of circumstances must be material, not purposely brought about by the moving party, and not contemplated at the time the parties entered into the prior agreement. *Waters v. Boney*, 5th Dist. Stark No. 2008-CA-00127, 2009-Ohio-574; *Weddington v. Weddington*, 5th Dist. Licking No. 10CA00023, 2010-Ohio-4967.

**{¶28}** As an appellate court, we are not fact-finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911.

**{¶29}** Husband specifically argues he did nothing "wrong" to get fired. There is nothing in the trial court's findings of fact and conclusions of law that indicate Husband did anything "wrong," or that he was fired. Rather, the trial court found Husband voluntarily resigned from his job, took a twenty-one month break to enjoy life and gather his thoughts, and is capable of earning an income more in line with what he was making at the time of the divorce. Thus, the trial court found Husband was under-employed and imputed $97,264.28 of income to him. We find the trial court's determination is supported by competent and credible evidence.

**{¶30}** Merriman testified Husband did not meet his sales quota for several years and was placed on probation in April of 2015. Merriman stated this meant he had to sell more business or else the company would take steps to terminate him at the end of 2015. Merriman testified Husband understood he needed to make changes and improve and that Husband had the opportunity to do whatever he could to achieve better results and GBS assisted him in his efforts to obtain sales. Merriman stated Husband voluntarily resigned from his job one month after receiving the letter placing him on probation.

**{¶31}** Husband acknowledged his production at GBS started going downhill in 2012. Husband agreed that he voluntarily resigned from GBS and that the sales goals set for him by GBS were reasonable. Husband testified he made the determination to quit GBS when his opinion was that he would not make the same amount of money

elsewhere. Husband was unemployed for twenty-two months, during which time he walked the dog, worked out, and traveled. He also took a break, enjoyed his life, and gathered his thoughts. Husband acknowledged that in 2014, his last full year at GBS, his gross income was $97,264.28. Husband testified he now is employed at Acme earning $8.75 per hour and working 28 to 32 hours per week. When asked about obtaining other sales jobs, Husband testified he did not want a job with straight commission and no health insurance.

{¶32} Husband also argues the uncontroverted evidence at trial shows he quit his job before he was fired and had to go several months without pay. We disagree that the evidence is uncontroverted. Rather, Merriman testified Husband was placed on probation in April of 2015, which meant Husband had to sell more business or else the company would take steps to terminate him at the end of 2015. Merriman stated Husband understood that he needed to make changes and improve substantially. Merriman testified Husband had the opportunity to do whatever he could to achieve better results and GBS supported and assisted Husband's efforts to obtain sales. While Husband testified he resigned to avoid being fired, the testimony of Merriman demonstrates Husband had at least eight months increase his productivity by the end of 2015. Instead, Husband voluntarily resigned on May 8, 2015. The trial court is vested with the authority to assess the credibility of the witnesses and is free to believe all, some, or none of Husband's testimony. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Additionally, the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**{¶33}** In this case, the trial court did not abuse its discretion in finding no substantial change in circumstances because the decrease in Husband's income was voluntary and was brought about by him.  Husband's second assignment of error is overruled.

III.

**{¶34}** In his third assignment of error, appellant argues the trial court erred and abused its discretion in failing to review and terminate the child support obligation. Husband again contends the trial court erred in finding him voluntarily under-employed and erred in imputing income to him.  Based upon our analysis in Husband's second assignment of error, we find there is competent and credible evidence to support the trial court's decision.

**{¶35}** We additionally note that, as of June 3, 2018, Husband is no longer paying child support.  Both Husband and Wife were provided a Notice of Child Support Termination Investigation conducted by CSEA that found child support should terminate on June 3, 2018.  The trial court adopted and approved the CSEA's recommendations on July 2, 2018.  Husband's third assignment of error is overruled.

**{¶36}** Based on the foregoing, Husband's assignments of error are overruled.

{¶37} The May 30, 2018 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division, adopting and approving the magistrate's decision denying his motion for modification or termination of spousal support and motion for termination of child support, is affirmed.

By Gwin, P.J,

Wise, John, J., and

Wise, Earle E., J., concur