[Cite as *Butcher v. Butcher*, 2011-Ohio-2550.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95758

---

## SALLY J. BUTCHER

PLAINTIFF-APPELLEE

vs.

## RONALD K. BUTCHER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Domestic Relations Division of the
Cuyahoga County Court of Common Pleas
Case No.   D-270637

**BEFORE:**   Keough, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   May 26, 2011

**ATTORNEY FOR APPELLANT**

Ellen S. Mandell
55 Public Square
Suite 1717
Cleveland, OH 44113

**ATTORNEY FOR APPELLEE**

Raymond J. Costanzo
Costanzo & Lazzaro
13317 Madison Avenue
Lakewood, OH 44107

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Ronald K. Butcher ("Husband"), appeals from the trial court's judgment entry adopting the proposed qualified domestic relations order ("QDRO") of plaintiff-appellee, Sally J. Butcher, n.k.a. Peterson ("Wife"). For the following reasons, we reverse and remand with instructions.

{¶ 2} In September 2000, the parties' marriage was terminated by a divorce decree that incorporated and adopted the parties' negotiated handwritten separation agreement. Pursuant to the judgment of divorce, a QDRO was to be submitted to the trial court resolving Wife's interest in Husband's Ford Motor Company pension. Husband submitted his proposed QDRO to Wife; however, she did not respond to the proposal. In February 2009, Husband moved the trial court to adopt his proposed QDRO, which the court adopted a week later. Upon receiving notification of the signed QDRO, Wife filed a motion for relief from judgment, arguing that she did not receive notice of Husband's motion and proposed QDRO. Wife also requested that the trial court adopt her proposed QDRO. Husband filed a brief in opposition to Wife's motion, arguing that his proposed QDRO should be implemented.

{¶ 3} The parties' motions and competing QDROs were referred to a magistrate. No hearing was held, as the parties agreed no questions of fact were at issue. The magistrate issued a written opinion recommending that

the court grant Wife's motion for relief from judgment and adopt Wife's proposed QDRO.

**{¶ 4}** The magistrate identified the issue before it as follows: "When minimalist language is used in a separation agreement regarding the division of marital pension by coverture fraction, exactly what terms can a court subsequently adopt in a QDRO to clarify the intent of the parties as evidenced in the separation agreement, without crossing over legal boundaries where the post-decree QDRO becomes a void modification of the divorce decree's division of property[?]"

**{¶ 5}** The magistrate found that a conflict in interpreting this issue existed between the Twelfth and Eighth appellate districts, citing *Adkins v. Bush*, Butler App. No. CA2002-05-131, 2003-Ohio-2781, and *Gordon v. Gordon* (2001), 144 Ohio App.3d 21, 759 N.E.2d 43. In resolving this conflict, the magistrate determined *Gordon* should control because it was from this appellate district. In applying *Gordon*, the magistrate recommended that Wife "should have [a] marital interest, based upon the stated coverture fraction, in all of [Husband's] pension benefits if real meaning is to be given to the parties' agreement, that 'all further retirement and investment accounts of husband shall be divided equally.'" Accordingly, the magistrate recommended that Wife's QDRO, which utilized coverture fraction and provided Wife with early retirement supplements, interim supplements,

temporary benefits, and pre-retirement survivorship benefits under Husband's Ford retirement account, be adopted.

{¶ 6} Husband filed written objections to the magistrate's decision, in which he challenged only the recommendation to adopt Wife's proposed QDRO. The trial court adopted the magistrate's decision in its entirety, without a hearing. Husband now appeals, arguing as his sole assignment of error that the trial court erred in adopting Wife's proposed QDRO.

{¶ 7} The standard of review on appeal from a decision of a trial court adopting a magistrate's decision is whether the trial court abused its discretion. *O'Brien v. O'Brien*, Cuyahoga App. No. 86430, 2006-Ohio-1729, _11. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. However, an abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, _15.

{¶ 8} It is well settled that pension and retirement benefits are marital assets subject to equitable division upon a divorce. R.C. 3105.171; *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292. A trial court cannot modify or amend a marital property division incident to a divorce or

dissolution decree, absent expressed consent by the parties. R.C. 3105.171(I). This prohibition is jurisdictional. See, e.g., *McKinney v. McKinney* (2001), 142 Ohio App.3d 604, 608, 756 N.E.2d 694.

{¶ 9} To effectuate the division of pension and retirement benefits, the domestic relations court enters a QDRO, which is an order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefit payable with respect to a participant under a plan * * *." Employee Retirement Income Security Act of 1974, Section 206(d)(3)(B)(i)(I). Ordinarily, it is issued subsequent to and separate from the decree of divorce itself. A QDRO is therefore merely an order in aid of execution on the property division ordered in the divorce decree dividing retirement or pension assets. *McKinney* at 608. If the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it. Id., citing *Tarbert v. Tarbert* (Sept. 27, 1996), Clark App. No. 96-CA-0036.

{¶ 10} In this case, the dispute centers around the meaning of the divorce decree and separation agreement on which the QDRO would issue. When parties dispute the meaning of a clause in their separation agreement, a trial court must first determine whether the clause is ambiguous. *Adkins* at _26. A clause is ambiguous where it is subject to more than one

interpretation. Id., citing *Weller v. Weller* (1996), 115 Ohio App.3d 173, 179, 684 N.E.2d 1284. A trial court has broad discretion in clarifying ambiguous language by considering the parties' intent and the equities involved. Id. If the decree and separation agreement are ambiguous regarding the division of Husband's retirement and pension accounts, the court can properly clarify their meaning without violating the prohibition of R.C. 3105.171(I). *Gordon* at 24; *Adkins* at _26.

{¶ 11} However, if the terms in the separation agreement are unambiguous, a trial court may not clarify or interpret those terms. *Adkins* at _27, citing *In the Matter of Leonhart v. Nees* (Aug. 20, 1993), Erie App. No. E-93-03; Sowald & Morganstern, Domestic Relations Law (2002) 438, Section 9:48. "'Further, where there is no uncertainty, but only an absence in the agreement of a provision about a particular matter, the court must not construe as included something intended to be excluded nor make the contract speak where it was silent.'" *Adkins* at 27, quoting Sowald & Morganstern.

{¶ 12} Therefore, the question before this court is whether the QDRO adopted by the trial court is a modification or clarification of the separation agreement. If it is a modification, then the QDRO is void because the trial court did not have jurisdiction to make a modification. See R.C. 3105.171(I).

However, if it is a clarification, we must determine whether the trial court abused its discretion in adopting Wife's proposed QDRO.

{¶ 13} The relevant portion of the parties' separation agreement is Section 3(C), entitled "Pension, Retirement, Stocks, Bonds, etc." The crux of this appeal involves subsection (b), which provides:

{¶ 14} "Husband has further retirement benefits through Ford Motor Company. All further retirement & investment accounts of Husband shall be divided equally (all accounts <u>but</u> Tesphe). Date of termination of marriage is the court's journalization date. Wife's interest in Husband's pension of retirement accounts shall be secured through a separate order upon Husband's employer."

{¶ 15} Wife contends that an equal division of the Ford retirement account includes pre-retirement survivorship benefits, early retirement supplements, interim supplements, and temporary benefits, and that the account should be divided by coverture fraction. In support of her argument, Wife maintains that *Hoyt* is the controlling authority to guide us with our decision. However, the procedural posture of *Hoyt* is distinguishable from the case before us. In *Hoyt*, the Ohio Supreme Court reviewed a trial court's decision dividing marital property and established guidelines for courts to consider when dividing retirement and pension benefits in a divorce action.

{¶ 16} In the case before us, the Butchers entered into a separation agreement where they agreed on the division of marital assets. From the record, we glean that both parties and their attorneys, over a course of various pretrials, negotiated the division of marital property, including pension and retirement accounts. The trial court did not determine how the marital property should be divided and did not utilize any guidelines established by *Hoyt*. Accordingly, we do not find *Hoyt* helpful. The parties negotiated the division of their marital property and that agreement was memorialized in the separation agreement adopted by the divorce decree. However, the "minimalist language" used in the separation agreement regarding the division of Husband's Ford retirement account has caused the controversy in this matter.

{¶ 17} The trial court indicated that a conflict among appellate districts exists in resolving the issue of "minimalist language" contained in separation agreements. See *Adkins* and *Gordon*.

{¶ 18} Husband urges this court to follow the *Adkins* decision, where the Twelfth District was faced with an identical issue. In *Adkins*, the parties' separation agreement simply provided that: "Wife shall receive 1/2 of Husband's pension through his employer." The *Adkins* trial court adopted Wife's proposed QDRO, which provided pre- and post-retirement benefits, supplements, and survivorship benefits. On appeal, the *Adkins* court

concluded that because the "minimalist language contained in the inartfully drafted separation agreement" was not ambiguous, the trial court abused its discretion in extending or modifying the agreement. Id. at _28. "That agreement provides simply that [wife] is to receive one-half of [husband's] pension through his employer. There is nothing ambiguous about that clause. The QDRO proposed by [wife] and adopted by the trial court tried to 'fill in the gaps' left by Section V of the parties' separation agreement by allowing [wife] to share in any pre-retirement and post-retirement benefits that [husband] may acquire or had acquired, and by providing [wife] with survivorship benefits. However, these provisions of the QDRO do not simply clarify or construe an ambiguity in the parties' separation agreement, but, instead, amend or modify the agreement, which is not permitted." Id.

{¶ 19} However, the trial court in this case relied on this court's holding in *Gordon* and found that when minimalist language is used, the trial court is authorized to clarify the parties' separation agreement to reflect the intent of the parties. In *Gordon*, the trial court was asked to clarify a term that was inadvertently left out of the separation agreement and QDRO, but the parties intended to include. This court held that "the magistrate's intent was merely to clarify a point that had been inadvertently left out of the order. The court used the survivorship rights as part of the calculation of the appellant's and appellee's shares of the marital estate. Therefore, by granting the appellee's

relief from judgment and reissuing a new order in the spirit of what had been the intent of the two parties, the actions of the lower court were simply to clarify a mistake made in the earlier order."   Id. at 25.

{¶ 20} In *Gordon*, it appears that extrinsic facts and evidence were presented to the trial court so it could determine the intent of the parties at the time the separation agreement was executed.   In dividing the parties' marital assets, the *Gordon* trial court used the survivorship rights as part of the calculation.   Therefore, it appeared that the parties intended that survivorship rights would be awarded to the Wife.   Accordingly, it was proper to clarify the term that was inadvertently left out of the decree.

{¶ 21} In the instant case, we do not have an inadvertent mistake that simply needs to be added or clarified; rather, the trial court was requested to interpret the separation agreement and "fill in the gaps."   Moreover, the trial court did not conduct a hearing to determine the intent of the parties at the time the separation agreement was executed.   A hearing would have allowed for a more meaningful appellate review of the "inartfully drafted separation agreement."   *Adkins*, supra.

{¶ 22} Although the trial court found that a conflict exists among appellate districts, we do not find such conflict.   The issue in *Gordon* was whether the trial court could clarify a provision that was mistakenly left out of the QDRO and separation agreement, whereas *Adkins* resolved whether

the trial court could interpret the separation agreement to determine the parties' intent regarding what benefits should be awarded under the pension. The issues in these two cases are distinguishable and accordingly, there is no conflict.

{¶ 23} The case before us resembles the facts in *Adkins* and we find it persuasive. The unambiguous language in the separation agreement provides that the parties agreed to divide Husband's Ford retirement account equally. The QDRO adopted by the trial court "filled in the gaps" left in the parties' separation agreement. But the QDRO adopted by the trial court does not simply clarify or construe an ambiguity in the separation agreement; rather, it expands and modifies the agreement, which is prohibited by R.C. 3105.171(I). Accordingly, we find that the trial court lacked jurisdiction to approve a QDRO that provides Wife with early retirement supplements, interim supplements, temporary benefits, and pre-retirement survivorship benefits, absent any showing the parties intended for Wife to share in such benefits. The QDRO adopted by the trial court is rendered void.

{¶ 24} Judgment reversed and case remanded to the trial court with instructions to conduct an evidentiary hearing to determine the intent of the parties at the time of execution of the separation agreement as to how Husband's Ford retirement account should be divided, and to adopt a QDRO reflecting such intent.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR