[Cite as *Ostanek v. Ostanek*, 2020-Ohio-3930.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

JULIA M. OSTANEK,                              :        **O P I N I O N**

           Plaintiff-Appellee,            :

    - vs -                                       :        **CASE NO. 2019-L-140**

GREGORY F. OSTANEK,                      :

           Defendant-Appellant.        :

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 2000 DR 000178.

Judgment: Affirmed in part and reversed in part; remanded.

*R. Russell Kubyn*, Kubyn & Ghaster, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Kenneth J. Cahill*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}   Appellant, Gregory F. Ostanek, appeals from an October 15, 2019 judgment of the Lake County Court of Common Pleas, Domestic Relations Division, denying his Civ.R. 60(B) motion to vacate a domestic relations order issued on January 22, 2013.  The judgment is affirmed in part and reversed in part.

## The Divorce Decree

{¶2}   Following a marriage of 23 years and two children born of the marriage, Gregory Ostanek and Julia Ostanek (appellant and appellee, respectively)[1] were

---

1. The parties are identified by their first names herein, for clarity and convenience.

granted a divorce, pursuant to a judgment entry of divorce issued by the trial court on October 17, 2001. The parties entered into stipulations regarding, inter alia, the nature and extent of separate and marital property, separate and marital debt, and the disposition of each item. The stipulations were incorporated by reference into the divorce decree and were approved and ordered into execution by the trial court.

{¶3} By stipulation, it was ordered that "during the marriage" is the time from the date of marriage on February 25, 1978, to the date of trial on April 23, 2001. Relevant herein, the parties also stipulated that "the house shall immediately be placed for sale." The parties further stipulated, with regard to Gregory's pension under the Federal Employees Retirement System ("FERS"), that "[t]he FERS shall be divided 50/50 with the court reserving jurisdiction to issue a QDRO if/when the law changes." The pension was listed in the stipulated schedule of Marital Assets and Liabilities as follows:

| PROPERTY ITEM | VALUE/DEBT |
| --- | --- |
| * * * | |
| Federal Employees Retirement System Pension (H) | $58,461.41 |

{¶4} As it pertains to the house and Gregory's pension, the trial court ordered as follows in the final divorce decree:

IT IS FURTHER ORDERED AND ADJUDGED that the following is the parties' marital property and debts. Each party shall retain, free and clear of any interest of the other, the property attributed to him/her and each party shall pay, indemnify and hold the other harmless on the debt attributed to him/her:

| PROPERTY ITEM | VALUE/DEBT |
| --- | --- |
| The marital residence located at 2597 Townline Road, Madison, OH, shall immediately be placed for sale, the mortgage extinguished and the net proceeds divided evenly between the parties. | |

2

<u>WIFE</u>
* * *

| | |
|---|---|
| One-half of FERS Pension by QDRO | approx. $29,230.71 |

<u>HUSBAND</u>
* * *

| | |
|---|---|
| One-half of FERS Pension | approx. $29,230.71 |

** The FERS Pension shall be divided by QDRO. Both parties shall cooperate and execute any and all documents necessary to effectuate the division of this asset.

* * *

IT IS FURTHER ORDERED AND ADJUDGED that no just cause for delay under Civ.R. 54(B) exists and the Court shall retain jurisdiction to approve the QDRO which is to be submitted. The parties shall take all action necessary to prepare and present for signature and filing any QDRO required by this judgment entry.

{¶5} The divorce decree reflects an address for each party, neither of which was the marital residence. Julia used another address in Madison, Ohio; Gregory used a Wickliffe, Ohio address. Following the divorce, the marital residence was sold. Gregory moved to Washington, D.C.

**The COAP**

{¶6} Over 11 years later, on January 22, 2013, the trial court issued a Court Order Acceptable for Processing under the Federal Employees Retirement System ("COAP").[2] The COAP was prepared by the QDRO Group at the direction of, and approved by, Julia's counsel. It was not signed by Gregory or his counsel but indicated that Gregory had been "served per attached." The certificate of service indicates a copy of the COAP had been sent to Gregory on January 9, 2013, via regular U.S. mail at 2597 Townline Rd., Madison, Ohio 44057—the parties' previous marital residence.

---

2. A COAP is a form of qualified domestic relations order ("QDRO") used to effectuate a judicial division of rights in a federal pension retirement plan.

3

{¶7}    The COAP explains that "this Order creates and recognizes the existence of a former spouse's right to receive a portion of the employee's benefits payable under [FERS].  Such benefits may represent a portion of the Employee Annuity, a Refund of Employee Contributions or may award a Survivor Annuity to the former spouse.  It is intended to constitute a Court Order Acceptable For Processing under final regulations issued by the Office of Personnel Management ('OPM')."   Specifically, the COAP ordered the following with regard to Gregory's pension (in relevant part and original emphasis):

> **7. Amount of Former Spouse's Benefit:**  This Order assigns to Former Spouse an amount equal to **Fifty Percent (50%)** of the Marital Portion of the Employee's Self-Only, unreduced Monthly Annuity determined as of the Employee's date of retirement.  For purposes of calculating Former Spouse's share of Employee's benefit, the Marital Portion shall be determined by multiplying the Employee's Self-Only, unreduced Monthly Annuity by a fraction, the numerator of which is the total number of months of Creditable Service earned by the Employee during the marriage **(from February 25, 1978 to April 23, 2001)** and the denominator of which is the total number of months of the Employee's Creditable Service accrued under [FERS] * * *.   The marriage began on **February 25, 1978**.
>
> In addition to the above, when COLA's [Cost-of-Living Adjustment] are applied to Employee's retirement benefits, the same COLA shall apply to the Former Spouse's share.
>
> Notwithstanding anything contained herein to the contrary, the Former Spouse's assigned share of the Employee Annuity as calculated above, shall be reduced in accordance with the terms set forth in Section 10 regarding the Former Spouse's entitlement to a Former Spouse Survivor Annuity.
>
> **8. Benefit Commencement Date:** The Former Spouse shall commence her benefits as soon as administratively feasible following the date this Order is approved as a [COAP], or on the date the Employee commences his benefits, if later.  Payments shall continue to Former Spouse for the remainder of Employee's lifetime, however, should Former Spouse predecease the Employee, then such benefits shall become payable to her **estate**. The Employee agrees to arrange or to execute all forms necessary

4

for the OPM to commence payments to the Former Spouse in accordance with the terms of this Order.

**9. Refund of Employee Contributions:** If Employee leaves Federal service before retirement and applies for a refund of employee contributions under FERS, Former Spouse shall be entitled to a prorata share of the refund of such employee contributions.

**10. Former Spouse Survivor Annuity:** Pursuant to Section 8341(h)(1) of Title 5, United States Code, Former Spouse shall be awarded a former spouse survivor annuity under [FERS] **equal to a pro-rata share**.

Further, the costs associated with providing this surviving spouse annuity coverage shall be divided equally between the Employee and the Former Spouse. Employee agrees to take all necessary steps to elect Former Spouse as the designated beneficiary for purposes of establishing and sustaining such surviving spouse coverage for Former Spouse.

**15. Continued Jurisdiction:** The Court shall retain jurisdiction with respect to this Order to the extent required to maintain its status as a [COAP] and the original intent of the parties as stipulated herein. Further the Court shall retain jurisdiction to enter such further orders as are necessary to enforce the award to Former Spouse of the benefits awarded herein, including the recharacterization thereof as a division of benefits earned under another retirement system in lieu of the retirement benefits under FERS or other benefits received in lieu of FERS retirement benefits, or to make an award of alimony (in the sum of benefits payable plus future cost of living adjustments) in the event that Employee fails to comply with the provisions contained above requiring said payments to Former Spouse by any means.

{¶8} No appeal was taken from the 2001 judgment entry of divorce or from the 2013 COAP.

**Motion to Vacate**

{¶9} Over five years later, on April 5, 2018, Gregory filed in the trial court a "Motion to Vacate [the COAP] filed January 22, 2013 Pursuant to Civil Rule 60(B)(5)." Julia was represented by the same counsel she had at the time of the divorce, whereas Gregory had obtained new counsel.

{¶10} In an attached affidavit, Gregory averred he never saw the COAP prior to its filing, as Julia's counsel sent it to their previous marital residence where Julia knew he had not lived since 2001. Gregory further averred that he attempted to rectify the matter through FERS, to no avail, and subsequently obtained a copy of the COAP from his present counsel.

{¶11} As cause for his motion to vacate the COAP, Gregory stated that Julia "has, and continues to receive, approximately $2,065.50 from my pension plan when in fact [Julia] should only be receiving approximately $722.89 per month. The Court Order filed January 22, 2013 has been misconstrued by the Pension Plan administrator to pay far more benefits to [Julia] than she is entitled to receive. Therefore, it is necessary for this Court to issue a new court order reducing [Julia's] monthly allowance from [Gregory's] pension plan." Within the memorandum of law in support of his motion to vacate, Gregory contended the following:

> It was the intent of the parties that [Julia] should only receive a pension benefit equal to fifty percent (50%) of the accrued benefit from February 25, 1978 through April 23, 2001. The attached report from the QDRO Group definitely reflects that [Julia] has received a monthly benefit far above what she should have received if [the COAP] had not been misconstrued and more definitively explained the extent of [Julia's] benefit.
>
> [Gregory] further states that [the COAP] was filed more than eleven (11) years after the Judgment Entry of Divorce. [Gregory] never saw the court order of January 22, 2013 prior to its filing. [Gregory] had moved out of state more than eleven (11) years earlier and [Julia] was well aware of where he lived in the Washington DC area.

{¶12} Attached to his motion are a letter and report from the QDRO Group, which estimated Gregory's "frozen" benefit accrued as of April 23, 2001, the date the marriage was terminated, to be $1,369.04 per month. Because the service was all marital, Julia would have been entitled to one-half that amount, or $684.52 per month.

6

Increasing that amount for COLA since February 2013, the current amount to which Julia would be entitled of Gregory's "frozen" benefit would be $722.89 per month.

{¶13} On July 27, 2018, Gregory also filed a "Motion to Disgorge Funds." Gregory alleged Julia was erroneously paid an approximate amount of $80,000.00 from his FERS pension and requested the trial court order Julia to disgorge those funds.

{¶14} Julia did not file a response to the Civ.R. 60(B)(5) motion. She filed a Motion to Strike Gregory's motion to disgorge funds, claiming Gregory's remedy lies with the FERS pension plan administrator, not with Julia.

{¶15} Gregory procured a congressional inquiry into the matter with the United States Office of Personnel Management ("OPM"), which administers FERS pension plans. Pursuant to correspondence dated November 29, 2018, OPM reviewed Gregory's plan and determined it had miscalculated the Former Spouse's Marital Share. Gregory had been underpaid from his self-only annuity in the amount of $58,379.32 from May 1, 2013, through November 30, 2018. However, OPM withheld the underpayment until it was adjusted to reflect the former spouse survivor annuity. OPM further stated it would continue to honor the survivor annuity that was awarded to Julia in the COAP and that Julia was to pay for the cost of the survivorship benefit from the court-ordered payments. The cost of providing for the former spouse survivorship benefit ($139.50) would be subtracted from Julia's marital share ($1,393.13) of Gregory's monthly retirement payments ($4,956.00). Thus, OPM determined Julia was entitled to a monthly payment of $1,253.63—she had been receiving over $2,000.00 each month since Gregory retired in 2013.

{¶16} Subsequently, Gregory received notice from OPM that he had received an overpayment in the amount of $18,542.00, representing the entire monthly cost of providing for the survivor annuity from February 1, 2013, through November 30, 2018.

OPM scheduled a reduction of Gregory's monthly annuity by $515.05 per month for the next 36 months. Gregory filed an objection with OPM as to this determination, which had not been resolved at the time of trial.

{¶17} On February 25, 2019, a trial was held before the magistrate on the motion to vacate the COAP. Both parties were represented by counsel. Gregory testified, as did Brian Hogan from the QDRO Group. Julia did not appear for trial; the magistrate noted that her presence had not been excused.

### Magistrate's Decision & Trial Court's Order

{¶18} The magistrate issued a decision on April 26, 2019, denying Gregory's Civ.R. 60(B)(5) motion because it "does not comply with the rule in that [it] was not filed within a reasonable time." With regard to this dispositive issue of timeliness, the magistrate concluded as follows:

> In the case at hand, [Gregory] testified that he first became aware of the division of his U.S. Postal retirement account in 2013. In fact, at that time he took several affirmative actions in order to find out additional information about the distribution percentages between himself and [Julia]. These actions included emailing the United States Office of Personnel Management [OPM] and meeting with a case manager at OPM on three separate occasions in order to get information. [Gregory's] last contact with OPM was in 2013. From 2013 until 2018, no other action was taken by [Gregory] in order to get clarification or documentation. [Gregory], through counsel, filed a Motion to Vacate in April 2018, a full five years after his first communication with OPM about the distribution of his pension.
>
> Taking all of these facts into consideration this is not a "reasonable time" within the consideration of Civil Rule 60(B)(5), and therefore, [Gregory's] Motion to Vacate should be dismissed. As a result, no analysis is necessary regarding any other testimony that was presented.

{¶19} Gregory filed objections to the magistrate's decision. He argued that his motion to vacate was filed within a reasonable period of time under the circumstances and that, regardless of Civ.R. 60(B)(5), the trial court had continued jurisdiction and

8

equitable power to rectify the mistake of Julia receiving more of the pension award than the court had ordered and more than the parties had intended. He further objected on the basis that his due process right to receive notice of the COAP had been violated when it was mailed to the parties' previous marital residence.

{¶20} With leave of court, Gregory filed the trial transcript and supplemental objections. He argued the COAP should have been vacated because it was inconsistent with the divorce decree regarding (1) the method of calculation used to determine the amount Julia was to receive from his pension and (2) the survivor annuity granted to Julia, including the allocation of the expense for said benefit.

{¶21} The trial court issued a judgment entry on October 15, 2019, adopting and supplementing the magistrate's decision. The court supplemented the decision by concluding the COAP was not inconsistent with the divorce decree. With regard to the calculation method and survivor annuity, the court found as follows:

> The decree clearly provides each party receives ½ of [Gregory's] FERS, which in 2001 had an approximate present day value of $29,000.00. In his objection, [Gregory] ignores the transcript testimony of Brian Hogan herein. Mr. Hogan of the QDRO Group testified an FERS pension grants survivorship benefits as part of the pension package. Mr. Hogan testified if a FERS pension division is silent as to survivorship rights, the QDRO Group's default position is to include the right of survivorship to the alternate payee. Mr. Hogan further testified that is also the default position of OPM, when implementing a COAP which is silent as to survivorship. The pension provision in the decree of divorce was silent as to survivorship. Therefore, in that each party was awarded ½ of [Gregory's] pension, which includes survivorship rights, each party is to pay ½ of the monthly cost for [Julia's] survivorship right. The Court notes the right of survivorship for FERS employees was not created by the QDRO Group and did not enlarge the decree of divorce. It was part and parcel of [Gregory's] FERS pension package itself and OPM's implementation of the pension division order and corresponding COAP. [Gregory's] objection is not well taken.
>
> [Gregory] also objects to the COAP division of [Gregory's] pension by the coverture method as opposed to the frozen method. Mr.

9

Hogan testified the QDRO Group uses the coverture method as the default when the pension division order is silent as to which method is to be used; OPM uses the same default. Herein, the coverture method was used by the QDRO Group for the COAP preparation. The Defendant's objection is not well taken.

{¶22} The trial court also adopted the magistrate's conclusion that Gregory's motion to vacate was not filed within a reasonable time. The court concluded by stating that, as evidenced in the trial transcript, Gregory "acknowledged his strategy for the QDRO preparation was to do nothing and wait for something to come to him. [Gregory] now reaps the consequences of his own inaction and procrastination as to the division of his FERS pension. [Gregory's] Civ. Rule 60(B)(5) motion, which resulted from his own indifference and inaction over 17 years, was properly dismissed by the Magistrate."

**Assignments of Error**

{¶23} Gregory filed a timely notice of appeal from the trial court's entry and asserts two assignments of error:

> [1.] The trial court committed prejudicial error denying defendant-appellant, Gregory F. Ostanek's motion to vacate pursuant to Civ.R. 60(B)(5) upon its opinion that defendant-appellant was not denied due process since appellant failed to cooperate as to the execution of the paperwork necessary for the division of the pension.
>
> [2.] The trial court committed prejudicial error denying appellant's objection by finding that it was proper that appellant pay for one-half (1/2) the survivorship expense and that it was proper use [sic] the coverture method as required in the "COAP" even though the judgment entry of divorce did not address these issues.

**Civil Rule 60(B)**

{¶24} Civ.R. 60(B)(5) provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (5) any other reason

10

justifying relief from the judgment. The motion shall be made within a reasonable time * * *."

> To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken.

*GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. "Civ.R. 60(B) relief is improper if one of the above requirements is not satisfied." *LaRosa v. LaRosa*, 11th Dist. Geauga No. 2001-G-2339, 2002 WL 408074, *3 (March 15, 2002), citing *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994).

{¶25} "'With respect to the first prong of the [Civ.R. 60(B)] test, [the rule] does not contain any specific provision requiring a movant to submit evidential material, such as an affidavit to support the motion for relief from judgment. However, the movant must specifically allege operative facts which would support a meritorious claim or defense to the judgment.'" *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2011-A-0065, 2012-Ohio-4005, ¶24, quoting *Brewster v. Fox*, 11th Dist. Lake No. 2003-L-010, 2004-Ohio-1145, ¶9 (internal citations omitted). "'Alternatively, the second and third prongs require the movant to "submit material of an evidential quality that would indicate the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5) and that the motion is made within a reasonable time."'" *Id.*, quoting *Brewster, supra*, at ¶9, quoting *Citibank N.A. v. Ohlin*, 11th Dist. Trumbull No. 2000-T-0037, 2002 WL 331739, *2 (Mar. 1, 2002).

{¶26} "In regard to the general purpose of Civ.R. 60(B), this court has indicated that the rule 'attempts to strike a balance between protecting the finality of judgments and the unjust operation of a voidable judgment.' Stated differently, the rule provides an

equitable remedy under which relief from a judgment should be allowed when so dictated by the interests of justice." *Id.* at ¶18, quoting *Brewster*, *supra*, at ¶6, and citing *Mortgage Elec. Registration Sys., Inc. v. Kaehne*, 11th Dist. Portage No. 2007-P-0033, 2008-Ohio-4051, ¶13.

{¶27} "In reviewing the denial of a 60(B) motion on appeal, an appellate court has an obligation to uphold the determination unless the trial court engaged in an abuse of its discretion." *Id.* at ¶31 (citation omitted).

{¶28} We initially emphasize that all three requirements of the Civ.R. 60(B) test must be met before relief from a final judgment is warranted. Thus, a trial court is permitted to deny a Civ.R. 60(B) motion solely on the basis that it does not satisfy the "timeliness" requirement. In other words, even if a movant alleges a meritorious claim or defense and establishes a reason justifying relief from the judgment, failure to file the motion within a reasonable time is sufficiently fatal. *See*, *e.g.*, *Irwin v. Irwin*, 11th Dist. Lake No. 95-L-102, 1996 WL 586762, *4 ("Given that appellant's argument concerning the timeliness issue is without merit, her argument as to the mistake issue has technically been rendered moot.").

### Inherent Authority to Vacate Void Judgments

{¶29} On appeal, Gregory does not assign error to the conclusion that he failed to file his motion within a reasonable time. Rather, he circumvents the possibility of mootness by arguing under both assignments of error that the COAP is void, not voidable, and that the timeliness requirement of Civ.R. 60(B)(5) is therefore irrelevant.

{¶30} "The QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶7. "A division or disbursement of property * * * is not subject to future

12

modification by the court except upon the express written consent or agreement to the modification by both spouses." R.C. 3105.171(I).

{¶31} "Properly speaking, however, a QDRO is distinct from the decree dividing or disbursing marital property. '[A] QDRO is merely an order in aid of execution on the property division *ordered* in the divorce or dissolution decree. So long as the QDRO is consistent with the decree, it does not constitute a modification, which R.C. 3105.171(I) prohibits, and the court does not lack jurisdiction to issue it.'" *Angelo v. Angelo*, 11th Dist. Trumbull No. 2012-T-0094, 2013-Ohio-5265, ¶19, quoting *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶19 (emphasis sic). Because the sole purpose of a QDRO is to implement the terms of a divorce decree, it "'may not vary from, enlarge, or diminish the relief that the court granted in the divorce decree.'" *Wilson*, *supra*, at ¶18, quoting *Lamb v. Lamb*, 3d Dist. Paulding No. 11-98-09, 1998 WL 833606, *2 (Dec. 4, 1998).

{¶32} Where the terms of a QDRO conflict with the property division set forth in the divorce decree, many courts—including this one—have held that the QDRO is void or a legal nullity. *Angelo*, *supra*, at ¶19, citing *Pawlak v. Pawlak*, 8th Dist. Cuyahoga No. 95734, 2011-Ohio-5652, ¶10; *Patten v. Patten*, 4th Dist. Highland No. 10CA15, 2011-Ohio-4254, ¶17; and *Kachmar v. Kachmar*, 7th Dist. Mahoning No. 08 MA 90, 2010-Ohio-1311, ¶50; *but see Pearl v. Pearl*, 2d Dist. Champaign No. 2012-CA-6, 2012-Ohio-4752, ¶17 ("a QDRO which varies from the division of pension plan benefits ordered in a decree of divorce or dissolution in violation of R.C. 3105.171(I) * * * is voidable for error").

{¶33} When a party claims a judgment is void, that party need not comply with, and the trial court need not rely on, Civ.R. 60(B). Rather, the trial court retains inherent authority to vacate a void judgment. *See Angelo*, *supra*, at ¶18; *see also Blaine v.*

13

*Blaine*, 4th Dist. Jackson No. 10CA15, 2011-Ohio-1654, ¶17 (collecting cases). "A trial court may exercise that inherent power by treating a Civ.R. 60(B) motion as a common-law motion to vacate a void judgment." *Plummer v. Plummer*, 2d Dist. Montgomery No. 23743, 2010-Ohio-3450, ¶27 (citation omitted); *see also Beachler v. Beachler*, 12th Dist. Preble No. CA2006-03-007, 2007-Ohio-1220, ¶19 and *Angelo, supra*, at ¶18-22 (treating a Civ.R. 60(A) motion as a motion to vacate void judgment).

{¶34} Gregory contends the COAP is void ab initio because it is inconsistent with the divorce decree and contrary to the parties' stipulations. Specifically, he contends that the COAP fails to accurately implement the divorce decree by utilizing the incorrect method of calculation and by granting a survivor annuity that inures solely to Julia's benefit, with the cost allocated to both parties.

{¶35} The parties evaluated Gregory's motion using the Civ.R. 60(B) standard, as did the magistrate's decision. Generally, this court refrains from considering issues on appeal that the trial court has not first considered. However, in overruling Gregory's objections and supplementing the magistrate's decision, the trial court evaluated his claim that the COAP is inconsistent with the divorce decree and explicitly determined the two documents do not conflict. Accordingly, we may review Gregory's argument on appeal that the COAP is void because it conflicts with the divorce decree. *See e.g.*, *Blaine, supra*, at ¶18.

### De Novo Review

{¶36} Whether a judgment is void is a question of law this court reviews de novo. "Moreover, whether a QDRO conflicts with a separation agreement incorporated into a dissolution or divorce decree presents a question of law that we review de novo." *Blaine, supra*, at ¶19 (citation omitted).

14

{¶37} At the time of the divorce, the parties stipulated the present value of Gregory's FERS pension was $58,461.41 and that "the FERS shall be divided 50/50 with the court reserving jurisdiction to issue a QDRO if/when the law changes." The stipulations did not include any agreement or language regarding the method of calculation to be used or a survivor annuity.

{¶38} In approving and executing these stipulations, the trial court ordered Julia shall retain "one-half of FERS Pension by QDRO / approx. $29,230.71" and Gregory shall retain "one-half of FERS Pension / approx. $29,230.71." The divorce decree did not include any language or instruction regarding the method of calculation to be used or a survivor annuity.

**Method of Calculation**

{¶39} The COAP prepared by the QDRO Group assigns to Julia an amount equal to fifty percent (50%) of the marital portion of Gregory's monthly annuity, *determined as of Gregory's date of retirement*. The COAP orders the marital portion is to be determined by multiplying Gregory's monthly annuity by a fraction. The fraction is the total number of months of creditable service earned by Gregory during the marriage, divided by the total number of months of creditable service accrued by Gregory under FERS.

{¶40} This method of calculation is referred to as "traditional coverture."

> [Under] the "traditional coverture" method, or percentage method, a court determines the amount of money due the non-participant spouse by using the value of the pension at retirement to determine the 'monthly accrued benefit.' The court then multiples this monthly accrued benefit by the traditional coverture fraction, which employs a 'ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment' to arrive at the marital portion of the pension benefit. The non-participant spouse then receives his or her percentage share of that marital portion. By waiting and using the value of the pension at retirement, this method awards the non-participant

15

> spouse any post-divorce increase in the value that is attributable to the non-participant's share. Accordingly, where the eventual, matured monthly payments are greater, due to the participant spouse's working after the divorce, than if he or she had retired the day of the divorce, then the non-participant's monthly benefit would be greater as well.

*Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258, ¶18 (internal citations omitted), quoting *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 182 (1990).

{¶41} Gregory contends, on the other hand, that the divorce decree actually ordered division of his pension using the "frozen coverture" method.

> Under the frozen coverture method, or dollar amount, the trial court 'freezes' the pension benefits at the amount in the account as of the divorce date. Sometimes called the 'hypothetical' approach, it calculates the value of the participant spouse's retirement account had he or she retired on the same day the parties divorced, using the then-present base pay and years of service. Where the participant spouse started working before the marriage, the court can apply a coverture fraction to determine the marital portion of the 'frozen' amount. It does so by dividing the number of years in the plan while the parties were married by the total number of years in the plan at the time of the divorce. * * * Under this approach, the non-participant spouse receives no interest the account accrues after that date.

*Id.* at ¶17, citing *Reising v. Reising*, 2d Dist. Clark No. 2010-CA 92, 2012-Ohio-1097, ¶24.

{¶42} The Sixth District case of *Borton v. Borton*, 6th Dist. Fulton No. F-10-003, 2011-Ohio-143, is similar to the facts at hand. There, "the divorce decree established that the First Energy 401(k), 'shall be divided equally between the parties on a 50/50 basis, and the parties stipulated a value of $102,000 as of May 6, 2003.'" *Id.* at ¶17. Husband contended "that any amount in excess of $51,000 accrue solely to his benefit and not be shared equally between the parties." *Id.* The *Borton* Court held as follows:

> We note simply that the divorce entry did not establish a cap or maximum on the distribution to [Wife] from the 401(k) at $51,000. Rather, it established that the total value at the stated date to be $102,000 and that the plan be divided equally on a 50/50 basis. As

16

such, any appreciation or depreciation occurring between that valuation date and the payout date must be shared equally between the parties to comport with the unambiguous order of a 50/50 split of the value of the account. To suggest otherwise breaches the clear terms of the agreement.

*Id.* at ¶18.

{¶43} Similarly, here, the divorce decree unambiguously establishes the total value of the FERS pension at the stated date and that the plan was to be divided on a 50/50 basis pursuant to a QDRO. As such, the COAP does not conflict with the divorce decree by utilizing the "traditional coverture" method of calculating the marital portion of Gregory's monthly annuity as of the date of his retirement. Nor does it vary, diminish, or enlarge the relief granted in the divorce decree. His argument to the contrary is not well taken.

{¶44} Gregory's argument would possibly have merit if the divorce decree had ordered a one-half division of the FERS pension *as of the date the marriage terminated.* *See, e.g., Johnson v. McCarthy*, 10th Dist. Franklin No. 17AP-655, 2019-Ohio-3489, ¶20 (citation omitted) ("Where a trial court awards a percentage of an unmatured pension to a non-participant spouse as of the date a marriage terminates, the only permissible method for determining the amount owed to the non-participant spouse is the frozen coverture method."); *accord Cameron, supra*, at ¶25 (recognizing courts have held that, when a property award specifies a date certain for the division of an unmatured pension, the frozen coverture method applies); *Schetter v. Schetter*, 2d Dist. Clark No. 2010 CA 35, 2011-Ohio-246, ¶18 (wife was not entitled to benefits accrued after the marriage was dissolved where the decree unambiguously stated she was entitled to only one-half of the value that husband had accrued as of the date of the

17

dissolution); *Blaine*, *supra*, at ¶21 (where the parties agreed to equally split the value of the account with each party receiving a sum certain).

{¶45} But the decree at hand did not include any such limiting language, and it must therefore be enforced as written. Further, "'mere silence on an issue or a failure to address it does not create an ambiguity where none otherwise exists.'" *Cameron*, *supra*, at ¶27, quoting *Pierron v. Pierron*, 4th Dist. Scioto Nos. 07CA3153 & 07CA3159, 2008-Ohio-1286, ¶10. We conclude the COAP is not inconsistent with the divorce decree as it pertains to the method of calculation.

**Survivor Annuity**

{¶46} With regard to the survivor annuity, we find two cases from our sister districts analogous to the situation at hand: *Adkins v. Bush*, 12th Dist. Butler No. CA2002-05-131, 2003-Ohio-2781, and *Butcher v. Butcher*, 8th Dist. Cuyahoga No. 95758, 2011-Ohio-2550.

{¶47} In *Adkins*, the parties' separation agreement merely provided that Wife was to receive one-half of Husband's pension. *Adkins*, *supra*, at ¶4. Wife proposed a QDRO to the trial court, without Husband's signature, which granted her survivorship benefits. *Id.* at ¶5-17. The Twelfth District noted that, "'where there is no uncertainty, but only an absence in the agreement of a provision about a particular matter, the court must not construe as included something intended to be excluded nor make the contract speak where it was silent.'" *Id.* at ¶27, quoting Sowald & Morganstern, Domestic Relations Law (2002) 438, Section 9:48. The *Adkins* Court then concluded as follows:

> The issues presented in this case arise from the "minimalist language" contained in the parties' inartfully drafted separation agreement. That agreement provides simply that Adkins is to receive one-half of Bush's pension through his employer. There is nothing ambiguous about that clause. The QDRO proposed by

18

> Adkins and adopted by the trial court tried to 'fill in the gaps' * * * by providing Adkins with survivorship benefits. However, these provisions of the QDRO do not simply clarify or construe an ambiguity in the parties' separation agreement, but, instead, amend or modify the agreement, which is not permitted. Accordingly, the trial court erred by adopting Adkins' proposed QDRO and placing it of record without Bush's signature.

*Id.* at ¶28 (internal citation omitted).

{¶48} The Eighth District relied on *Adkins* to reach the same result in *Butcher*. There, the unambiguous language in the separation agreement provided that the parties agreed to divide Husband's retirement account equally. *Butcher*, *supra*, at ¶14. The trial court approved a QDRO that provided Wife with early retirement supplements, interim supplements, temporary benefits, and pre-retirement survivorship benefits, absent any showing the parties intended Wife to share in those benefits. *Id.* at ¶23. The Eighth District held that by "filling in the gaps" of the separation agreement, the trial court did not simply clarify or construe an ambiguity; rather, it expanded and modified the agreement, which is prohibited by R.C. 3105.171(I). *Id.* Accordingly, the appellate court concluded that the trial court lacked jurisdiction to approve the QDRO, rendering it void. *Id.*

{¶49} Similarly, here, the parties' stipulations and the trial court's divorce decree did not include any agreement or order as to survivorship benefits from Gregory's FERS pension. Further, the unrebutted evidence at the trial on the motion to vacate was that the parties did not intend for Julia to receive a survivor annuity and that Gregory never reviewed or approved a COAP granting her that benefit.

{¶50} Julia asserts that Gregory's argument ignores the testimony of Brian Hogan, an expert witness from the QDRO Group, the company that prepared the COAP. Mr. Hogan testified that FERS grants survivorship benefits as part of the pension package. He further testified that if a pension division is silent as to those

19

benefits, the QDRO Group's and OPM's default position is to grant the right of survivorship to the alternate payee (i.e., the nonparticipant former spouse).

{¶51} There are cases where this default position may be appropriate. For instance, in *Redding,* the Twelfth District held that the trial court was justified in clarifying its original property division to allow a provision in the QDRO granting Wife survivorship benefits, where the separation agreement provided for Wife to receive one-half of Husband's retirement benefits in such manner "as may be of benefit to her." *Redding v. Redding*, 12th Dist. Clinton No. CA99-06-015, 1999 WL 1238834, *3 (Dec. 20, 1999). Also, in *Gordon*, the Eighth District held that the trial court was justified in reissuing a new QDRO to grant Wife survivorship rights because the court had used those rights as part of the calculation of the parties' shares of the marital estate. *Gordon v. Gordon*, 144 Ohio App.3d 21, 25 (8th Dist.2001).

{¶52} Here, however, the trial court approved a COAP that "filled in the gaps" of the silent divorce decree, absent any evidence that the parties intended Julia to receive survivorship benefits from Gregory's pension. Thus, the COAP expanded and modified the divorce decree. The trial court was without jurisdiction to approve a COAP that granted Julia survivorship benefits, rendering it void. Thus, it was also error to apportion half the cost of providing the survivor annuity to Gregory.

### Disposition

{¶53} We conclude that Gregory's second assignment of error has merit to the extent indicated. The trial court did not err in approving a COAP that utilized the "traditional coverture" method of calculating Gregory's monthly annuity. The trial court did err, however, in approving a COAP that granted Julia a survivor annuity and in apportioning half the cost to Gregory. Because this renders the COAP void, the timeliness requirement of Civ.R. 60(B)(5) is irrelevant.

20

{¶54} Under his first assignment of error, Gregory asserts he is entitled to relief from the COAP because he was never given a chance to review it or to object to it, which fundamentally denied him due process. This issue has been rendered moot by our disposition of his second assignment of error, and it is overruled on that basis. *See* App.R. 12(A)(1)(c) and *State ex rel. Ford v. Ruehlman*, 149 Ohio St.3d 34, 2016-Ohio-3529, ¶55, quoting *State v. Moore*, 4th Dist. Adams No. 13CA987, 2015-Ohio-2090, ¶7 ("An issue is moot 'when it has no practical significance and, instead, presents a hypothetical or academic question.'").

{¶55} The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This cause is remanded to the trial court for further proceedings consistent with this opinion.

THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.